(No. 49214.—

BILLIE GILLESPIE, Appellant, v. R. D. WERNER CO., INC., Appellee.

*Opinion filed April 3, 1978.—Rehearing denied May 26, 1978.*

G. Edward Moorman, of Smith, Allen, Moorman & Larson, of East Alton, for appellant.

Wagner, Bertrand, Bauman & Schmieder, of Belleville (Bernard H. Bertrand, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

Plaintiff, Billie Gillespie, was injured in July 1972 as the result of a fall due to the collapse of an aluminum ladder, manufactured by the defendant, R. D. Werner Company (hereafter Werner), while he was doing electrical work. A jury in Madison County found for Gillespie and awarded damages ($72,500) to him. The circuit court denied Werner's motion for judgment notwithstanding the

verdict. The appellate court, with a dissent, reversed, finding the trial court had erred in denying that motion. (43 Ill. App. 3d 947.) We allowed Gillespie's petition for leave to appeal. 58 Ill. 2d R. 315.

The issue is whether or not there was sufficient evidence to establish a *prima facie* case of strict liability in tort. We find there was. The facts are set forth in the opinion of the appellate court and will not be repeated here except as is necessary.

For a manufacturer to be liable for injuries resulting from the use of its product, the "plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623. Accord, W. Prosser, Torts 671-72 (4th ed. 1971).) Neither of the parties disputes the fact of Gillespie's injury; nor do they disagree that one of Werner's ladders was involved. Testimony by both Gillespie and one of his witnesses, aiding him at the time of the injury, established that Gillespie was on the ladder, near the top, doing electrical work when he fell. Both said the ladder fell "to the left" while Gillespie fell "to the right," on his elbow.

Gillespie's expert testified that, based on his examination of the ladder, the left front rail buckled and, for this to happen, there had to be prior damage—"prior structural damage or a structural defect." The damage occurred near the bottom of the rail where the lowest step is riveted to the rail. Werner's chief engineer, Larry Kocina, called by plaintiff under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60), testified that this particular ladder was manufactured in 1971. He said that during this period a slight crack was sometimes detected in the flange of the side rail of ladders at the point where the side rail begins to flair out near the top of the ladder. This

infrequent defect was corrected in 1973, he added. When testifying during the defendant's case, Kocina said the damage to the ladder could only have been caused by an impact force, such as a falling body; it could not have been caused, without more, by a man properly balanced on the ladder.

Werner argues, rightly, that proof of plaintiff's injury while using a ladder manufactured by Werner is not enough. The plaintiff must give evidence of a defect in the product which existed when the product left the manufacturer's control. Werner maintains there "was no evidence of a defect for which the manufacturer was responsible" nor evidence that the ladder was defectively constructed. At the close of its brief, Werner directs our attention to a case similar to the case at bar—*Coyne v. John S. Tilley Co.* (1975), 368 Mass. 230, 331 N.E.2d 541. Gillespie wishes to persuade us that *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, and *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill. 2d 339, are dispositive.

In *Tweedy,* this court held that a "*prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed 'to perform in the manner reasonably to be expected in light of [its] nature and intended function.' " (64 Ill. 2d 570, 574.) There the plaintiff offered no expert testimony regarding the presence of a specific defect in the brake system of a car. This court affirmed the jury verdict for the plaintiff, who was injured when the brakes failed, and rejected the contention of defendant Ford Motor Company that the evidence failed to show any defect in the brake system of the car, manufactured by Ford and driven only 7,500 miles. *Dunham* was cited and quoted from with approval in *Tweedy.*

The *Dunham* court stated, "Although the definitions of the term 'defect' in the context of products liability law use varying language, all of them rest upon the common premise that those products are defective which are dangerous because they fail to perform in the manner reasonably to be expected in light of their nature and intended function." (42 Ill. 2d 339, 342.) Moreover, "the requirement that the defect must have existed when the product left the manufacturer's control does not mean that the defect must manifest itself at once." (42 Ill. 2d 339, 342.) This court affirmed the jury verdict for the plaintiff, who suffered the loss of one eye when a chip from a hammer, manufactured by the defendant, struck his eye. He had used the hammer for 11 months in the course of doing farmwork. Each party offered the testimony of an expert, each of whom found no flaws in the forging and no metallurgical defects due to the manufacturing process. (The experts disagreed as to what carbon content in the steel was likely to prevent chipping.)

Here the evidence does not show "abnormal use or reasonable secondary causes." Gillespie and his aide, finding the ladder to be "new" and nothing wrong with it, used it while doing electrical work above a drop ceiling. The helper handed tools to Gillespie, who was working almost directly overhead, so he did not have to descend. The various tools, when not in use, were apparently placed on a table in the room in which they were working. Gillespie denied he worked to the side in such a way as to cause an imbalance. The concrete floor was level and covered with tiles. The owner and operator of the company renting the ladder to Gillespie's employer testified that it was his practice "to check and inspect all equipment" he rented out. Given this evidence, it was reasonable for the jury to conclude there was an absence of abnormal use and that the ladder failed "to perform in the manner reasonably to be expected in light of" its

"intended function." (*Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill. 2d 339, 342.) For Werner to be liable, it was not necessary that the defect *manifest itself before* the ladder left Werner's control.

Moreover, we find *Coyne v. John S. Tilley Co.* (1975), 368 Mass. 230, 331 N.E.2d 541, distinguishable. There the plaintiff recovered for injuries suffered in a fall from an aluminum ladder manufactured by the defendant. The findings were vacated by the appellate division, which was affirmed by the reviewing courts. The Massachusetts high court believed "the occurrence of this accident will support an inference of negligence" but felt that inference alone would not support a finding for the plaintiff. (368 Mass. 230, 236, 331 N.E.2d 541, 545.) The evidence exonerated "intermediate handlers as a cause of the ladder's collapse," the court said, but the evidence as to the plaintiff's use was sparse. (368 Mass. 230, 237, 331 N.E.2d 541, 546.) "There is no evidence that the plaintiff put the ladder to the normal use for which it was intended." (368 Mass. 230, 238, 331 N.E.2d 541, 547.) The court speculated the plaintiff could have overloaded the ladder or placed it so that the leg bore too much of the weight. Finally, the court reasoned, " 'The plaintiff need not exclude every possible cause for his injuries. He is only required to show a greater likelihood that his injury was caused by the defendant's negligence than by some other cause.' [Citations.] " 368 Mass. 230, 239, 331 N.E.2d 541, 547.

We believe here there was sufficient evidence for the jury to infer that Gillespie could be eliminated as a cause of his injuries, unlike in *Coyne*. In addition to the testimony by both parties' experts—in *Coyne,* the plaintiff presented no expert testimony—there was testimony by both Gillespie and the aide who was present when Gillespie was injured. Their testimony evidenced the following: the concrete floor was level and covered with tile; before

climbing, Gillespie inspected the ladder—coupled with the previous statement, an inference could be made that, the ladder was properly spread and standing; while on the ladder, he was not working off to either side but slightly in front and overhead—an inference could be made that the weight was evenly distributed on the ladder; the aide watched Gillespie in order to hand him equipment from the nearby table—an inference could be made that the ladder was not overloaded; and the ladder "shot out," to the left, from under Gillespie. As in *Coyne,* we "believe that a trier of fact could infer as matter of common knowledge that a relatively new \*\*\* [and] properly fabricated and designed aluminum ladder which had received proper care and usage would not collapse if put to the use for which it was intended." 368 Mass. 230, 235-36, 331 N.E.2d 541, 545.

We therefore find the circuit court was justified in denying Werner's motion for judgment notwithstanding the verdict. As this court ruled in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent [Gillespie here], so overwhelmingly favors movant [Werner] that no contrary verdict based on that evidence could ever stand." We cannot say that the evidence so favored Werner as to warrant a judgment *n.o.v.* Accord, *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 135.

Hence the judgment of the appellate court is reversed and the judgment of the circuit court affirmed.

*Appellate court reversed;*
*circuit court affirmed.*