JOHN G. MOTE, Plaintiff-Appellee, *v.* MONTGOMERY WARD & COMPANY *et al.*, Defendants-Appellants.

Third District   No. 3—83—0222.

Opinion filed June 29, 1984.—Rehearing denied August 17, 1984.

Stuart R. Lefstein and Robert T. Park, both of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island, for appellants.

Jack L. Brooks, of Laird, Chickris & Brooks, of East Moline, for appellee.

JUSTICE BARRY delivered the opinion of the court:

Plaintiff John C. Mote received a head injury as a result of a fall while painting the basement stairwell of a private home. He subsequently brought a products liability action against the seller and manufacturer of the aluminum stepladder which he was using at the time of injury, and following a jury trial, he was awarded $125,000 in damages. Defendants Montgomery Ward and Company and Consolidated Aluminum Corporation have appealed from the judgment entered on

the jury's verdict.

According to the evidence adduced at trial, on June 23, 1978, plaintiff and his son Dennis Mote placed a plank between two ladders to use as a scaffold to reach the ceiling and walls of the stairwell. A new six-foot aluminum ladder was placed on the floor at the top of the stairway and an eight-foot extension ladder was braced between the wall and a basement step near the bottom. The plank was placed on the second step from the bottom of the stepladder at the top of the stairs and on the top rung of the extension ladder in the stairwell with the end of the plank butted against the basement wall. The plank sloped downhill somewhat. The son then left to launder some drop cloths, and plaintiff began painting in the stairwell. He climbed up on the stepladder to reach up into a corner. He was holding a five-gallon bucket of paint and a roller, and as he stepped back down from the stepladder onto the plank, the ladder collapsed, and he fell down the basement stairs, striking his head against the wall on the way down. There were no other witnesses to the fall. Plaintiff, who was 76 years old at the time of the accident, was able to get up and continue working. He borrowed a wooden stepladder belonging to his customer and completed the stairwell that day.

Plaintiff's son returned to the house some time after the accident and took the broken ladder out to his father's truck. According to his testimony, the right side rail of the ladder was broken in two horizontally below the second step, but the step was still attached to the rail above the break. Plaintiff also stated that the right rail was broken and that the left rail was twisted and crumpled up after the accident. Plaintiff introduced into evidence a sales ticket which indicates that plaintiff returned the ladder to Montgomery Ward on July 18, 1978, and was given approximately $25 credit on a new ladder costing $35. The ticket is marked "Exchange." There is no evidence that plaintiff mentioned any bodily injury resulting from the accident, and it appears that the ladder was destroyed by Montgomery Ward, since there was no documentary evidence to the contrary nor of its return to the manufacturer.

Shortly after the accident, plaintiff began to suffer from headaches and gradually his physical and mental condition deteriorated. He suffered from severe memory loss and frequently became disoriented and incontinent. He finally was taken to a hospital on July 29, 1978. It was determined that plaintiff had suffered a subdural hematoma, and brain surgery was performed to remove the old blood and relieve the pressure inside his skull. The injury was determined to be one or two months old at the time of surgery. Plaintiff's condition is

much improved since the surgery, but he has not recovered the same mental sharpness and vigor that he had before the accident. He is more forgetful, cannot work as much, and is more often confused than before his injury.

The only witness called by defendants was their expert, Edward Cook, the former manager of engineering for Consolidated Aluminum, who described in detail the method of manufacture and testing procedures used on six-foot aluminum ladders. Photographs were introduced showing that each step of an aluminum ladder of similar construction could bear 900 pounds of weight. These tests were done to verify the design but not to check the quality of products actually placed on the market. Cook explained that he received notice of plaintiff's claim in May of 1979, and that all records of the company relating to ladder manufacture and design specifications, sales to Montgomery Ward, and returned ladders were destroyed in October of 1979, after Consolidated Aluminum stopped manufacturing ladders and other aluminum products. Cook testified that he could not give an opinion as to how this accident occurred, but he stated that a properly manufactured ladder would never break under a 200-pound load such as occurred here. He said a damaged ladder would be the *result* of a fall rather than the *cause*. The court excluded from evidence testimony by Cook that the most probable cause of this accident was either the other ladder, the extension ladder, slipping off the lower step, or the plank coming off the extension ladder, thereby damaging the subject stepladder as the plank rotated or fell.

As aforesaid, the verdict returned by the jury awarded plaintiff damages of $125,000, prompting this appeal. Defendants argue that the evidence was not sufficient to support a verdict in favor of plaintiff, that the $125,000 verdict was excessive, and that the reconstruction testimony of defendants' expert was erroneously excluded. We affirm.

Defendants first contend that a judgment notwithstanding the verdict should have been entered against plaintiff because there was no evidence that the ladder was unreasonably dangerous or that it failed prior to the accident or from which such inferences could reasonably be drawn. As defendants analyze the evidence, plaintiff's testimony that the ladder broke should not be taken literally, since he was facing away from the ladder as he stepped down onto the plank and did not see the ladder break. It is further argued that if plaintiff's testimony was not accurate, then the ladder and plank collapsed in some unknown fashion. Defendants go on to assume that, in the absence of an eyewitness to the breaking of the ladder, the proof of a

defect hinges on the description of the post-occurrence condition of the ladder by plaintiff and his son. Defendants insist that greater weight should be given the admitted testimony of their expert, who said that the breakage of 99% of all ladders is caused by the trauma occurring after the fall. Defendants further contend that other extrinsic causes were not excluded by plaintiff's evidence, and also the failure to produce the ladder or to have had it examined by an expert is fatal to plaintiff's case.

We think these arguments are unpersuasive. The Supreme Court of Illinois has said, in *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 574-75, 357 N.E.2d 449, 452:

> "A *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed 'to perform in the manner reasonably to be expected in light of [its] nature and intended function.' ***. As the court said in *Lindroth v. Walgreen Co.*, 407 Ill. 121, 134, [94 N.E.2d 847, 853], 'reasonable inferences may be drawn from established facts and all that can be reasonably required to establish controverted facts, whether the evidence be direct or circumstantial, is that the evidence creates a greater or less probability leading, on the whole, to a satisfactory conclusion,' and on review '[t]he inquiry *** is whether the result reached below was one which is reasonable *on the facts in evidence,* not whether other conclusions might also have been reached.' " (Emphasis added.)

Plaintiff's evidence indicates that the ladder had been purchased a few days prior to the accident and that it had been used only at this one house. Plaintiff's son had used it to paint around windows, and in doing so had stood only upon the bottom step. Although defendants suggest that we should not take literally plaintiff's testimony that he felt the ladder break under him, we consider the question of the meaning of plaintiff's language strictly a matter for the jury. Since the jury obviously chose to believe that plaintiff meant exactly what he said, it is beyond the function of a reviewing court to substitute our judgment for that of the jury. We also are convinced that the testimony of the expert is not necessarily in conflict with the plaintiff's theory that the accident was caused by a defective ladder. This ladder was not tested before leaving the manufacturer, and the expert quite clearly testified that a properly manufactured ladder would tolerate the weight and force applied to the step and side rails by plaintiff here, and that failure of the ladder would be impossible

under these circumstances. In a similar ladder case, the supreme court said that it was reasonable for the jury to conclude that there was an absence of abnormal use and that the ladder failed to perform in the manner reasonably to be expected in light of its intended function. The court further said, "[I]t was not necessary that the defect manifest itself before the ladder left [defendant's] control." (*Gillespie v. R.D. Werner Co.* (1978), 71 Ill. 2d 318, 323, 375 N.E.2d 1294, 1296.) Consequently, we hold that the trial court did not err in refusing to grant a judgment *n.o.v.* in favor of defendants.

Defendants advance a closely related argument: that the jury's verdict was contrary to the manifest weight of the evidence, which is a lesser standard to meet than for a judgment *n.o.v.* (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) However, we are persuaded that the evidence was sufficient to support the verdict under either test, and therefore we need not reconsider the evidence previously discussed.

■ Defendants next contend that it was reversible error to exclude certain testimony of their expert. Their offer of proof was as follows:

"Q. Mr. Cook, based on your experience with ladders and your experience as an engineer, and based on your investigation of this accident as you have testified to including your visits to the scene, were you able to form an opinion within a reasonable degree of engineering certainty regarding the cause of the fall which Mr. Mote took on June 23, 1978?

A. No, I was not.

Q. Tell us why not?

A. Because the facts in this case have never been presented to me with enough conclusion and they have changed so many times that I really don't know what happened.

Q. Mr. Cook, assuming the description of the accident which Mr. Mote gave in open Court today, do you know within a reasonable degree of engineering certainty any causes which could have produced the damage to the ladder described by Mr. Mote that he observed following the accident?

A. Yes, I do.

Q. What would those be?

A. Based on my experience in this business, I can say that the most probable cause of what I see today is in some fashion either the extension ladder at the bottom slipped off the steps on one side, or the plank came off the extension ladder and that end of the plank dropped and in so doing dropped Mr.

Mote down the stairs, and the plank either during rotation or falling would have a tendency to caulk and wedge between the second and third steps of the ladder and that could cause some type of damage, but how much and how severe, I will never know. It probably, based on his testimony that the ladder was somewhat cocked, yet it didn't tumble completely down the stairs, I think that a plank dropping and wedging in the structure could produce facts as he outlined them from the stand today."

Defendants characterize the testimony contained in the offer of proof as "reconstruction" testimony, and they argue that it should have been admitted so that the jury would understand the basis for the witness's opinion. As we have previously held, if expert opinion evidence based upon scientific or specialized knowledge would aid the jury in understanding the evidence, it would be error to exclude it. (*Leonard v. Pitstick Lake & Park, Inc.* (1984), 124 Ill. App. 3d 580.) On that basis, the trial court correctly permitted plaintiff's expert to testify in some detail as to defendants' manufacturing methods, the testing procedures utilized, and as to the load-bearing capabilities of this type aluminum stepladder. As we indicated earlier the expert was also permitted to testify as follows:

"A ladder would never break with a 200 pound weight on it. What causes breakage in 99 percent of all ladders is the trauma that exists after the fall of the ladder. Ladders don't fail under a load, because there is no way a person, because of the safety factors built into the ladders, can exert anything near an overload, and that's why there is a four time safety factor, and that's why they are built that way. You cannot get those kinds of loads on a ladder. So everytime you see problems in a ladder, it is something that is a result of a fall rather than the cause of a fall."

■ While this latter testimony was properly admitted, we cannot agree with defendants that the testimony contained in the offer of proof should have been admitted into evidence. It seems clear that the witness was speculating as to a possible alternative cause of the accident (a twisting of the plank or a slippage of the extension ladder at the lower end of the scaffold arrangement) and that speculation was directly contrary to plaintiff's testimony that the stepladder collapsed. As plaintiff has pointed out, if in fact the plank had slipped at the lower end and had rotated and wedged between the second and third steps of the stepladder, it is not likely that the resulting damage to the stepladder would have been a horizontal break in the side rail be-

low the second step; instead, it seems more logical that the damage would have occurred between the second and third steps where the plank was placed. In that connection, we note that in the offer of proof the witness stated that the plank falling could cause some type of damage to the ladder, "but how much and how severe, I will never know." We conclude that it was not error to exclude the expert's speculative testimony.

■■ Defendants' next assertion of error is that the jury's verdict was based upon an improper instruction, thereby entitling defendants to either a new trial or remittitur. Defendants rely upon *Baird v. Chicago, Burlington & Quincy R.R. Co.* (1976), 63 Ill. 2d 463, 349 N.E.2d 413, where the court held that, if the jury was properly instructed on the measure of damages, a reviewing court should not substitute its judgment for that of the jury as to the amount to be awarded. Defendants then reason that if the instructions were improper, the presumption as to propriety of the amount of damages would fail. We agree with these general principles.

Defendants then argue that there was no evidentiary foundation for plaintiff's instruction No. 2 setting out the elements of damages proved to have resulted from the accident caused by the condition of the ladder. The instruction listed "disability and disfigurement" as the first element and "pain and suffering experienced and reasonably certain to be experienced in the future" as the second element. Defendants contend that there is no evidence that plaintiff will have any pain in the future and therefore that it was improper to include that element in the instruction. Plaintiff, however, calls our attention to the rather extensive testimony of plaintiff and his sons concerning the nature and extent of plaintiff's injuries, and evidence indicating that those injuries are permanent. In addition, a report by a clinical psychologist indicated that plaintiff suffered from memory loss and organic brain impairment, and the treating physician testified as to physical and mental symptoms that would occur if plaintiff did in fact suffer permanent brain damage. Considering all the evidence relating to plaintiff's condition, we conclude that the foundation evidence was adequate and the instruction properly included future pain and suffering as an element of damages.

■■ Defendants also contend that the element of damages instruction included an improper duplication in that plaintiff's counsel admitted that disability and future pain and suffering were the same in this case. We consider this issue to have been waived on review because defendants failed to raise it in their post-trial motion.

■■■ Defendants also argue that the award of $125,000 is exces-

sive for a man of plaintiff's age. In reviewing the amount of damages, courts have said that the jury's determination will not be overturned unless the award is so excessive as to indicate that the jury was moved by passion or prejudice (*Huston v. Chicago Transit Authority* (1976), 35 Ill. App. 3d 428, 342 N.E.2d 190), or unless the amount of the verdict does not fall within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. (*LeMaster v. Chicago Rock Island & Pacific R.R. Co.* (1976), 35 Ill. App. 3d 1001, 343 N.E.2d 65.) Plaintiff calculates that he had lost at least $64,840 in wages prior to trial, that he would lose $58,000 in future earnings for the remainder of his life expectancy, and that he had incurred $6,816 in medical bills for a total of $129,656, excluding any amount for pain and suffering. We hold that the verdict was within the range of the evidence, indicating that the result was fair and reasonable compensation for this plaintiff.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

STOUDER, P.J., and ALLOY, J., concur.