RUBY VARADY, Plaintiff-Appellant, v. GUARDIAN COMPANY, Defendant-Appellee.

Fifth District No. 5—85—0480

Opinion filed April 2, 1987.

Michael A. Lawder, of Richard G. Reed, P.C., of Belleville, for appellant.

Wagner, Bertrand, Bauman & Schmieder, of Belleville, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Ruby Varady, filed a products liability action against defendant, Guardian Company (Guardian), and Cassell Sales, Inc. (Cassell), on August 15, 1980, in the circuit court of St. Clair County. Plaintiff's complaint sought money damages for injuries which allegedly resulted from the collapse of a defective aluminum crutch manufactured by Guardian and sold by Cassell. Cassell was later dismissed as a party pursuant to section 2—621 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—621, formerly Ill. Rev. Stat. 1981, ch. 110, pars. 801 through 805). The case against defendant Guardian proceeded to jury trial and on April 15, 1985, the jury returned a verdict in favor of plaintiff in the amount of $50,000. However, the circuit court subsequently granted defendant's motion for judgment not-

withstanding the verdict, finding that plaintiff failed to present sufficient evidence that the crutch which was the subject of the proceedings was defective. The plaintiff has perfected the instant appeal from this order.

Plaintiff contends that she presented a *prima facie* case of strict liability in tort and that the cause was properly submitted to the jury. Defendant responds that plaintiff failed to satisfy her burden of proving: (1) that the crutch was unreasonably dangerous; (2) that it was in that condition when it left defendant's control; and (3) that the unreasonably dangerous condition proximately caused plaintiff's injuries. Defendant also urges that the circuit court's judgment should be affirmed as a sanction for plaintiff's alleged violation of discovery rules. In the alternative, defendant asserts that the alleged discovery violation and trial errors entitle it to a new trial. We reverse and remand.

The relevant facts are as follows: Plaintiff, Ruby Varady, was 56 years of age and weighed approximately 185 pounds at the time of the incident in question. Her left leg had been amputated 4 inches above the knee more than 30 years prior to her alleged injury. On March 17, 1980, plaintiff purchased from Cassell a pair of new aluminum crutches manufactured by Guardian. An employee of Cassell's adjusted the crutches for plaintiff. On June 17, 1980, plaintiff drove to a ball field to see her grandson play baseball and she parked her car in a grass parking lot near the field. Plaintiff got out of her car and, using the crutches, walked to the trunk of the car to get a lawnchair. As she unlocked the trunk she saw her daughter approaching from her left. Plaintiff testified on direct examination as follows: "I saw my daughter and I started to turn around. And when I did, of course, naturally I'm holding onto my crutches, I could feel the crutch give way, and I, I held onto them like a dying man, but they just bent and I fell with them." On cross-examination plaintiff was asked if her crutch moved any as she turned and she responded: "No, the crutch went along with me, and then all of a sudden I could feel it give and I just stiffened up and held it and I went to fall."

Plaintiff testified that the crutch gouged her left armpit and that she felt pain in her shoulder, arm, and neck. Plaintiff was subsequently admitted to the hospital and underwent physical therapy. In the course of the next eight months plaintiff was treated by a variety of doctors. She admitted at trial that she had fallen several times during the period after the incident in question. Plaintiff testified that she had hurt her left shoulder in those later falls but not as severely as the June 1980 injury.

Plaintiff identified part of plaintiff's group exhibit number 1 as

one of the crutches she purchased in March 1980. She testified that the crutches were in perfect shape when she bought them, that she did not notice any defect in the crutches before the incident, and that she did not alter the crutches in any way. At the time of trial, the entire bottom of the crutch was bent over and the tip was missing. Plaintiff could not remember what had happened to the tip except to say "it was in the lawyer's hands." Plaintiff testified further that the top of the middle piece of the crutch was bent to a greater degree immediately after the incident than at the time of trial. Each crutch apparently consisted of two parts: two columns of the upper piece narrowed at the bottom and were connected by bolts to a middle, third column. It is the bottom of the third column that actually contacts the ground. Plaintiff testified that the manager of a ball team attempted to straighten the crutch after the incident, and plaintiff's daughter later testified that the manager straightened the crutch "a small amount." The crutches identified by plaintiff were ultimately offered into evidence by defendant.

Defendant attempted to establish alternative explanations for the collapse of the crutch during cross-examination of plaintiff and direct examination of plaintiff's daughter, Delores Stines, who was called as a witness for defendant. Plaintiff testified that when she stood at the trunk of her car and turned to her left, there was a shallow hole in the ground, 6 to 8 inches wide and 1½ to 2 inches deep. She testified that when she felt the crutch give way, the crutch was in the hole. However, she also stated that the ground was dry and that the crutch did not sink in the hole. Plaintiff related that the crutch stayed underneath her armpit when she fell. Defense counsel then asked plaintiff if her left leg hit the side of the crutch, to which plaintiff responded: "I have my stump so short it couldn't have possibly done that."

Delores Stines testified that she did not see plaintiff fall. She also testified that plaintiff had fallen several times before June 1980 and that plaintiff had sought medical treatment for dizziness before June 1980. The medical testimony in the record indicates that in March 1977 plaintiff complained of dizziness and loss of balance and that these may have been due to recent cataract surgery, her amputation, an inner ear problem, or brain stem eschemia. However, plaintiff testified that she was not suffering from dizzy spells at the time of the incident.

At trial, Ms. Stines testified that plaintiff told her after the incident "[t]hat her crutch went into the hole and her crutch bent and she lost her balance and fell." Stines admitted, however, that at her discovery deposition she had testified that "[plaintiff] said the tip of her

crutch went into the small hole and she lost her balance and fell." A medical history given to a treating physician three days after the fall states: "She says her crutch got into a hole, thus causing the fall."

The only other witness to testify at trial, apart from the evidence depositions of three treating physicians, was defendant's expert, Dr. Leonard Gulbransen, a professor of physical metallurgy at Washington University. Professor Gulbransen testified that he previously had examined some Guardian crutches at defense counsel's request. However, he testified that the crutches he examined previously were similar to but were not the same crutches admitted into evidence as plaintiff's group exhibit number 1. Nevertheless, he testified without objection that he had performed hardness tests on the crutches given to him previously by defense counsel and that these tests indicated that those crutches could withstand a vertical load of 27,000 pounds per square inch. In answer to a hypothetical question, Professor Gulbransen stated that he was unable to determine what degree of force the crutch first furnished him at trial could bear if a person fell onto it under the circumstances involved in plaintiff's fall. However, he did testify that it was his opinion that such crutch was bent by a lateral force and that it was quite safe and could accept a very large load.

On cross-examination, Professor Gulbransen testified that he had not performed tests on the set of crutches which were a part of plaintiff's group exhibit number 1 and that he had seen such crutches for the first time on the day he testified. He admitted that the metal composition of the two sets of crutches could be completely different. In answer to a hypothetical question, Gulbransen testified that if the crutch was being used in the way it was intended and the load was applied in a downward manner and the crutch buckled, there would be a defect in the metal.

 In order to establish a cause of action for strict liability in tort, "plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182, 188.) "A *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed 'to perform in the manner reasonably expected in light of [its] nature and intended function.' " (*Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 574, 357 N.E.2d 449, 452.) Consequently, it was not necessary for plaintiff

to present expert testimony that the product contained a specific defect. (See 64 Ill. 2d 570, 572, 357 N.E.2d 449, 451.) It was also not necessary for plaintiff to disprove all other possible causes of her fall and injury. (*Tulgetske v. R. D. Werner Co.* (1980), 86 Ill. App. 3d 1033, 1038, 408 N.E.2d 492, 495.) While strict liability cannot be based on mere speculation, guess, or conjecture, circumstantial evidence is sufficient to make out a *prima facie* case if it tends to negate other reasonable causes and justifies an inference of probability as distinguished from mere possibility. *Mateika v. La Salle Thermogas Co.* (1981), 94 Ill. App. 3d 506, 508, 418 N.E.2d 503, 505.

In the case at bar, plaintiff testified that as she turned to her left with her crutches under her armpits, the left crutch collapsed, causing her to lose her balance and fall. Defendant suggests that plaintiff lost her balance because of a dizzy spell or because the tip of her crutch went into a hole and that the crutch bent only from a lateral force, *i.e.*, because plaintiff's amputated leg hit it. However, plaintiff testified that she did not suffer from dizzy spells at the time of the incident and that her amputated leg could not have caused the crutch to bend. Plaintiff's evidence was bolstered by defendant's expert's testimony that if the crutch collapsed under a downward load while being used as intended, there would be a defect in the crutch. See *Mote v. Montgomery Ward & Co.* (1984), 125 Ill. App. 3d 839, 843-44, 466 N.E.2d 593, 596 (ladder collapse); *Nolan v. Shaf Manufacturing Co.* (1970), 128 Ill. App. 2d 19, 30, 261 N.E.2d 209, 213-14 (ladder collapse).

From the evidence presented in the case at bar, the jury could reasonably have concluded that the crutch was being used in a normal manner, that it failed to perform in the manner reasonably expected, resulting in plaintiff's fall and injury, and that there were no reasonable secondary causes for the fall. As in *Gillespie v. R. D. Werner Co.* (1978), 71 Ill. 2d 318, 375 N.E.2d 1294, another case involving the collapse of a ladder, there was sufficient evidence in the case at bar for the jury to find that the plaintiff was not the cause of her injuries. 71 Ill. 2d 318, 323, 375 N.E.2d 1294, 1296-97. See also *Tulgetske v. R. D. Werner Co.* (1980), 86 Ill. App. 3d 1033, 1038, 408 N.E.2d 492, 496.

■ It is well established that a judgment notwithstanding the verdict should be entered only when all of the evidence, viewed most favorably to the opponent (plaintiff here), is so overwhelmingly in favor of the movant (defendant) that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513; *Gillespie v. R. D. Werner Co.* (1978), 71 Ill. 2d 318, 324, 375 N.E.2d 1294, 1297.) It is

this standard a reviewing court must apply to determine whether the circuit court erred in granting a motion for judgment notwithstanding the verdict. See *Koehler v. Great Atlantic & Pacific Tea Co.* (1967), 90 Ill. App. 2d 458, 461, 232 N.E.2d 780, 782.

■ In the case at bar, we conclude that the evidence did not so overwhelmingly favor the defendant that no contrary verdict based on that evidence could ever stand. Therefore, we reverse the circuit court's entry of judgment notwithstanding the verdict based on grounds of the insufficiency of plaintiff's evidence.

■ We next consider defendant's remaining contentions. The record on appeal indicates that defendant filed a single post-trial motion requesting that the circuit court enter a judgment notwithstanding the verdict or, in the alternative, that the court order a new trial. As grounds for the relief requested, defendant contends, *inter alia*, that (1) plaintiff failed to present sufficient evidence to take the case to the jury; (2) plaintiff's original counsel had given defendant the wrong crutch in response to defendant's discovery request, which was not discovered until defendant's expert was to testify; (3) medical bills admitted into evidence were not connected to the June 1980 fall; (4) the court erred in giving the *Balestri* instruction regarding recovery for aggravation of a preexisting injury; and (5) the court erred in not allowing the impeachment of Delores Stines. The trial court, as previously noted, granted defendant's motion for judgment notwithstanding the verdict based on the insufficiency of plaintiff's evidence and did not rule on the alternative grounds alleged or alternative relief requested.

On appeal, defendant urges that even in the event we find the evidence sufficient to withstand its motion for judgment notwithstanding the verdict, we should affirm the circuit court's decision as a sanction for plaintiff's alleged discovery violation. In the alternative, defendant urges that it is entitled to a new trial for the alleged discovery violation or for the other three trial errors described above.

The circuit court did not rule conditionally on defendant's request for alternative relief, as required by section 2—1202 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—1202(f)), and the record does not indicate that defendant requested a conditional ruling. Under these circumstances, the general rule is that defendant's right to request a new trial on appeal is waived. (*Fulford v. O'Connor* (1954), 3 Ill. 2d 490, 501-02, 121 N.E.2d 767, 773; *Hanson v. Darby* (1968), 100 Ill. App. 2d 339, 349, 241 N.E.2d 110, 114-15. But see *Jackson v. Chicago Transit Authority* (1971), 133 Ill. App. 2d 529, 531-32, 273 N.E.2d 748, 750 (to avoid a miscarriage of justice, waiver rule not ap-

plied).) Consistent with the general rule, we hold that defendant has waived the right to raise on appeal the latter three alleged trial errors as grounds for a new trial. However, defendant's allegation of plaintiff's discovery violation requires consideration.

The record indicates that in early March 1981, defendant's original counsel filed and served upon plaintiff's original counsel, pursuant to Supreme Court Rule 214 (87 Ill. 2d R. 214), a request for production of discoverable items, which included a request to produce "[t]he subject crutch." On August 7, 1981, Guardian filed its interrogatory answers which included its president's statement that he had not yet seen or examined the "crutch in question" but that he "expect[ed] to examine the crutch on or about August 14, 1981." On July 7, 1983, defendant's original counsel was allowed to withdraw. Defendant's substitute counsel subsequently represented defendant through trial and represents defendant on appeal. On November 28, 1983, plaintiff filed her answers to defendant's interrogatories. In answer to the question whether any inspection of "the crutches in question" had been made after June 17, 1980, plaintiff responded that defendant's original counsel "had at least one expert, and possibly two, examine the crutch." On December 27, 1983, defendant filed its answers to plaintiff's supplemental interrogatories, and the answers indicated that "the crutches in question" had been examined by Professor Virgil Flannigan and defendant's president. On October 26, 1984, plaintiff's original counsel was allowed to withdraw, and on January 3, 1985, plaintiff's trial and appellate counsel entered his appearance. On March 11, 1985, defendant filed further answers to supplemental interrogatories, stating that L. B. Gulbransen had "examined the crutches that were given to us by plaintiff's counsel."

On the first day of trial, April 11, 1985, plaintiff identified plaintiff's group exhibit number 1 as the set of Guardian crutches which she purchased in March 1980 and which are the subject of this lawsuit. On April 12, 1985, defendant's expert witness, Professor Gulbransen, testified that the crutches he examined previously were not the same crutches as those in plaintiff's group exhibit one. While he had performed tests on "some crutches that were delivered to me like these by [defendant's counsel's] office," he had seen plaintiff's group exhibit number 1 for the first time that day, April 12, 1985. When Gulbransen testified during cross-examination that he had been told the crutches he examined previously were also Guardian crutches, defendant's counsel stated: "They were given to me by [plaintiff's original counsel]." On plaintiff's motion, counsel's remark was ordered stricken from the record. At the close of defendant's

case, defendant's counsel suggested to the court that he was considering calling plaintiff's original counsel as a witness "to show that he gave me the crutch at the time," but defendant rested without doing so. After the jury returned its verdict, at plaintiff's request she was allowed to withdraw group exhibit number 1.

We recognize that the issue of an alleged discovery violation could be considered waived for two reasons. First, defendant did not object when plaintiff identified at trial crutches allegedly different than those provided to defendant through discovery. In addition, defendant did not object or move for a continuance when defendant's expert testified that he had examined crutches other than those admitted as plaintiff's group exhibit number 1. Also, defendant did not move for sanctions at any time prior to filing its post-trial motion. Generally, these circumstances would warrant application of the waiver rule. Second, defendant did not obtain a conditional ruling on its request for a new trial pursuant to section 2—1202, which, as set out above, generally results in waiver. However, we note that defendant presented the alleged discovery violation in his post-trial motion both as a ground for judgment notwithstanding the verdict and as a ground for a new trial. Thus, it could be said that section 2—1202 does not prevent defendant from presenting this issue on appeal as a ground for judgment notwithstanding the verdict, i.e., alternative ground for the same relief, as distinguished from requesting the alternative relief of a new trial. See *Ralston v. Plogger* (1985), 132 Ill. App. 3d 90, 96-97, 476 N.E.2d 1378, 1382.

We note that due to the posture of the case at bar, we cannot be certain to do justice between the parties by either an outright affirmance or outright reversal of the trial court's order entering judgment notwithstanding the verdict in favor of defendant. A reversal of the trial court's grant of a judgment notwithstanding the verdict possibly may reward plaintiff for failure to comply with the rules governing discovery. On the other hand, an affirmance would result in the application of the strongest sanction available against the plaintiff for her failure to comply with discovery rules. Based on the evidence contained in the record before us, we are unable to state with certainty that either outright affirmance or reversal would result in justice being done.

In any event, it would work an impermissible result if the jury verdict in favor of plaintiff were allowed to stand if, because of plaintiff's noncompliance with a discovery request, the jury trial was not the truth-seeking process it should have been. Where necessary to ensure a fair trial and protect the judicial process from deterioration, a

reviewing court will consider error even when no objection is made in the trial court. (*Underwood v. Pennsylvania R.R. Co.* (1966), 34 Ill. 2d 367, 371, 215 N.E.2d 236, 239; *Wozniak v. Segal* (1974), 56 Ill. 2d 457, 460-61, 308 N.E.2d 611, 612-13 (waiver is not a limitation on the judicial power).) Furthermore, application of the waiver rule for defendant's failure to obtain a conditional ruling under section 2—1202(f) is not required where to do so would constitute a miscarriage of justice. (*Jackson v. Chicago Transit Authority* (1971), 133 Ill. App. 2d 529, 531-32, 273 N.E.2d 748, 750.) Therefore, in light of the unusual circumstances in the case at bar, we remand this cause to the circuit court for an evidentiary hearing on defendant's allegations of plaintiff's noncompliance with defendant's discovery request. See Supreme Court Rule 366(a)(5) (87 Ill. 2d R. 366(a)(5)).

We recognize that defendant's counsel was confronted with an awkward situation, *i.e.*, defendant's expert had apparently examined the "wrong" crutches and counsel faced the prospect of moving for a continuance, mistrial, or sanctions during the second day of a jury trial and proving that plaintiff's original counsel had given defendant the wrong crutches. However, we emphasize that we cannot countenance defendant's failure to present this issue to the circuit court as soon as it came to counsel's attention. A party should not sit by while something prejudicial occurs at trial, gamble on a favorable verdict, and complain only later if disappointed. (*Gaffner v. Meier* (1948), 336 Ill. App. 44, 48, 82 N.E.2d 818, 820.) Nor do we condone defendant's failure to obtain a conditional ruling on his post-trial request for a new trial, as required by statute and case law. However, in spite of defendant's apparent error in failing to preserve the alleged error, if the verdict of the jury was a product of plaintiff's alleged failure properly to furnish requested items of evidence on discovery, such verdict may not stand.

On remand, the circuit court is directed to conduct an evidentiary hearing to determine whether plaintiff in fact properly complied with discovery, *i.e.*, delivered to defendant the crutches identified by plaintiff at trial and, if not, to determine the circumstances surrounding the noncompliance.

Supreme Court Rule 219(c) (103 Ill. 2d R. 219(c)) provides in part that "[i]f a party, or any person at the instance of or in collusion with a party, unreasonably refuses to comply with any provision of [the supreme court rules on discovery] *** the court, on motion, may enter *** such orders as are just." We recognize that the traditional test of whether a party's conduct is unreasonable within the meaning of the rule is whether the conduct is characterized by a deliberate and pro-

nounced disregard for the rule. (*Serpe v. Yellow Cab Co.* (1973), 10 Ill. App. 3d 1, 5, 293 N.E.2d 742, 744; contra, *Ideal Plumbing Co. v. Shevlin-Manning, Inc.* (1981), 96 Ill. App. 3d 207, 210, 421 N.E.2d 562, 565 ("test is how important the undisclosed information is").) While the traditional test may be appropriate for pretrial situations, we believe that in the situation present in the case at bar, sanctions, especially a new trial, should not depend on whether plaintiff's alleged noncompliance was deliberate or inadvertent. If plaintiff did not deliver to defendant in pretrial discovery the crutch upon which the instant case is based, then, whatever the reason for the noncompliance, defendant was deprived of the ability adequately to prepare for trial and was perhaps deprived of the opportunity to present a defense.

If the circuit court finds that plaintiff did not furnish the crutch which was in use by plaintiff when she allegedly fell to defendant in discovery, we conclude that a new trial is warranted. (See *Biehler v. White Metal Rolling & Stamping Corp.* (1975), 30 Ill. App. 3d 435, 443, 333 N.E.2d 716, 722.) Ordinarily, orders or sanctions should be imposed to accomplish the objects of discovery, not to punish. (*White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 1028, 398 N.E.2d 24, 26.) If the circuit court finds that plaintiff did not furnish to defendant the crutch which is the basis of the case at bar and further finds that plaintiff's noncompliance was not inadvertent, the circuit court has additional remedies and sanctions at its disposal. Supreme Court Rule 219(c) (103 Ill. 2d R. 219(c)).

The circuit court's entry of judgment notwithstanding the verdict is therefore reversed, and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded with directions.

JONES and WELCH, JJ., concur.