MARTIN ARELLANO, Plaintiff-Appellant and Cross-Appellee, v. S G L ABRASIVES, Defendant-Appellee and Cross-Appellant.

First District (1st Division) No. 1—91—0157

Opinion filed May 3, 1993.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Alvin R. Becker and Timothy M. Kelly, of counsel), for appellant.

Burditt & Radzius, Chartered, of Chicago (Matthew J. Iverson and Joel R. Skinner, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Martin Arellano filed a one-count, strict products liability action against defendant SGL Abrasives for personal injuries suffered when a grinding wheel which defendant allegedly manufactured broke during use. Defendant responded and admitted that it manufactured grinding wheels which it sold to plaintiff's employer, but denied any defect, and charged plaintiff with assumption of risk and misuse. The jury returned a general verdict in plaintiff's favor for $274,298, but reduced the award by 70% based on product misuse. Pursuant to post-trial motions, the court vacated the jury's misuse finding and entered judgment notwithstanding the verdict (judgment *n.o.v.*) in favor of defendant. Plaintiff appeals the grant of defendant's judgment *n.o.v.* motion. Defendant cross-appeals the vacation of the jury's misuse finding and challenges an instruction given to the jury.

Plaintiff testified at trial that for 12 years he worked in a foundry for National Castings Corporation (Castings) as a welder and grinder. When working as a grinder, plaintiff would grind excess metal off of metal forgings by means of a grinding wheel mounted on a grinding machine. Plaintiff would wear a hard hat, special safety glasses, a leather apron down to his knees, shin guards and steel-toed shoes. None of the grinding machines at Castings were equipped with guards. Plaintiff used the same type of grinding wheel and grinder the entire time he worked at Castings.

On September 20, 1978, plaintiff was working the 4 p.m. to midnight shift. At about 7:30 p.m., he was grinding a piece of metal when his grinding wheel "exploded." Plaintiff was not injured.

Plaintiff picked up the pieces of the broken grinding wheel, took them to his foreman and asked for a new wheel. New grinding wheels were kept in a box and packed in protective wrapping.

Plaintiff's foreman gave plaintiff a second wheel from the same box as the prior wheel. Before mounting it himself, plaintiff inspected the grinding machine for damage but found none. Plaintiff mounted the second grinding wheel the same way he had always done. He made sure the wheel was mounted properly before he started grinding. No washer was required for the grinding wheel which plaintiff was using.

After grinding against a work piece for 10 to 15 minutes, the second grinding wheel exploded. A piece of the wheel struck plaintiff above the left knee, piercing his leather apron, and breaking his thigh bone. Plaintiff was taken to the hospital for his injuries and, as of trial, had not returned to work.

Because he was injured, plaintiff does not know what happened to the pieces of the second grinding wheel. Plaintiff never experienced a grinding wheel exploding in his 12 years of work.

Harold Van Orden, a 25-year employee of defendant, was called as an adverse witness and by the defense. On September 26, 1987, Van Orden examined fragments of a wheel sent to defendant by Castings. Defendant had manufactured the wheel, but the wheel may not have been the one which injured plaintiff. The wheel had little wear on it. Van Orden opined that no defect existed in the wheel he examined. Defendant subsequently destroyed the wheel which Castings had sent. No one from Castings indicated to defendant that the shipped wheel was the one which injured plaintiff or that it was involved in an injury-related accident.

When defendant receives a grinding wheel order, a computer generates a card with defendant's specifications, and a mold is assembled. Based on the volume of the mold, a recipe of abrasive grain, powdered bond and viscous liquid is mixed, poured, rotated, compressed, baked, shaped and balanced. After speed testing, detailed below, the wheels are packed in a cardboard box with safety instructions and shipped.

During speed testing, each wheel is spun at $1\frac{1}{2}$ times the maximum speed marked on the wheel. The entire test takes five to six seconds. According to Van Orden, if a defect existed in a wheel, it would not survive the speed test. The speed testing would reveal a defect even though no pressure is applied to the grinding wheel during the test; actual grinding adds little stress to a rotating wheel. Despite speed testing, about 200 wheels had been returned to defendant between 1978 and 1990.

Van Orden testified that Castings was defendant's customer in 1978. In September 1978, defendant sent Castings 209 new grind-

ing wheels. Defendant's records showed that the 209 wheels it sent to Castings were speed tested on September 6 and September 11, 1978.

Defendant does not know what happened to the wheel which injured plaintiff. Defendant did not learn that plaintiff was injured until defendant received plaintiff's complaint, some two years following the accident.

The defense called John Gradowski, the director of human resources for Castings. In 1978, Gradowski was Castings' safety director. Gradowski examined what he "believed" to be the grinder which plaintiff was using at the time of injury. Gradowski personally observed a washer on the spindle of the grinding machine. The spindle is the device which goes through the hole in the center of the grinding wheel, holding it in place. Gradowski did not know whether the grinding machine he observed had been altered in any way following plaintiff's injury.

George Reitmeier, defendant's liability expert, testified that grinding machine guards were available and the industry standard at the time of injury. He opined that plaintiff would not have been injured by the wheel when it broke if the required guard had been in place.

Reitmeier further opined that any defect in defendant's wheels would be discovered during speed testing or when the machine was started. A wheel breaking after 10 or 15 minutes of use without incident indicated the occurrence of damage to the wheel after manufacturing or operator misuse. Reitmeier believed that is what happened to the broken grinding wheel which Castings had sent back to defendant for examination following plaintiff's injury. The wheel fragments so returned yielded no sign of a manufacturing defect.

Reitmeier testified that it would be a violation of industry standards to utilize a washer when installing a grinding wheel. Such a washer would overstress the center mounting hole, increasing the tendency of the wheel to break. The wheel returned to defendant revealed a break pattern similar to the type produced when a wheel breaks with a washer improperly mounted.

Plaintiff offered no rebuttal evidence and no expert testimony whatsoever.

On appeal, we are first asked to address whether the trial court properly entered judgment *n.o.v.* in favor of defendant. (See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Apart from arguing that judgment *n.o.v.* was properly entered, defendant makes the further argument that judgment

*n.o.v.* was properly entered where plaintiff failed to make a *prima facie* case. We address this latter argument first.

To recover under strict liability in tort, "plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182, 188.) A *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or secondary causes, the product failed to perform in the manner reasonably to be expected in light of its nature and intended function. (*Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 574, 357 N.E.2d 449, 452; *Varady v. Guardian Co.* (1987), 153 Ill. App. 3d 1062, 1066, 506 N.E.2d 708, 711.) These matters may be proved inferentially by either direct or circumstantial evidence. (*Bejda v. S G L Industries, Inc.* (1980), 82 Ill. 2d 322, 330, 412 N.E.2d 464, 468.) It is not necessary for plaintiff to present proof that the product contained a specific defect. (*Bejda*, 82 Ill. 2d at 330, 412 N.E.2d at 468; *Varady*, 153 Ill. App. 3d at 1066-67, 506 N.E.2d at 711.) While strict liability cannot be based on mere speculation, guess, or conjecture, circumstantial evidence is sufficient to make out a *prima facie* case if it tends to negate other reasonable causes and justifies an inference of probability as distinguished from mere possibility. *Varady*, 153 Ill. App. 3d at 1067, 506 N.E.2d at 711.

■■ Initially, we believe that plaintiff *prima facie* established that defendant, not some third party, manufactured the grinding wheel which caused his injury. Plaintiff introduced evidence of defendant's shipment of grinding wheels to Castings just prior to the time when plaintiff was injured. Further, Harold Van Orden was questioned during plaintiff's case in chief about an interrogatory answer in which he admitted that defendant manufactured the grinding wheel referred to in plaintiff's complaint. Finally, no evidence existed that Castings received grinding wheels from other manufacturers. This evidence, we believe, allowed for the necessary inference that defendant manufactured the wheel which injured plaintiff.

Addressing the remainder of plaintiff's *prima facie* case, we believe plaintiff's testimony was sufficient to get to the jury on the issues of (1) whether a defective condition in the grinding wheel existed at the time the wheel left defendant's control, and (2) whether such defect was unreasonably dangerous.

Plaintiff's testimony was that he was a welder and grinder for 12 years. On the day of his injury, he was grinding for 15 minutes when the wheel suddenly exploded. Plaintiff obtained a second wheel from his foreman. This wheel was wrapped in protective paper and contained within a box. Plaintiff inspected his grinding machine for damage but found none. Plaintiff mounted the second wheel the same way he always did. Never in plaintiff's experience had a wheel exploded before that day. Plaintiff knew that no washer was to be used in mounting this type of wheel. Plaintiff mounted the wheel and assured that it was properly mounted. He then began grinding and continued to grind in his usual manner. Fifteen minutes later, while grinding, this wheel exploded, injuring plaintiff.

We believe plaintiff's testimony established a *prima facie* case. For 12 years, plaintiff never encountered an exploding wheel. The day he was injured, he mounted and used a new grinding wheel the same way he always had. After grinding for 15 minutes in his usual manner, the wheel exploded, causing his injury. Although plaintiff offered no eyewitness testimony, his testimony alone, if believed, allows for the necessary inference that the second grinding wheel contained a defect which existed at the time of manufacture rendering it unreasonably dangerous for its intended use.

The Illinois cases plaintiff cites in his brief support the result we reach. In *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449, plaintiff was injured while driving a 1966-model Ford LTD manufactured by defendant Ford Motor Company and delivered to defendant Wright Ford Sales, Inc., which in turn sold it to a member of plaintiff's family. Plaintiff was injured when the automobile struck a tree after plaintiff allegedly applied the break pedal and emergency brake without success. Plaintiff offered no specific evidence of a defect. In affirming the jury verdict in favor of plaintiff, the court found the following evidence to have established plaintiff's *prima facie* case:

> "Here the evidence shows that the brakes of an automobile driven approximately 7,500 miles, inspected by Wright prior to delivery, inspected again at 6,000 miles, and subjected to no abnormal use prior to the occurrence failed to function in the manner reasonably to be expected. Plaintiff was driving carefully at a reasonable rate of speed, the weather was good, the roads were dry, he knew the intersection well, and there was no evidence of any reasonable secondary cause."
> *Tweedy*, 64 Ill. 2d at 574-75, 357 N.E.2d at 452.

In *Gillespie v. R.D. Werner Co.* (1978), 71 Ill. 2d 318, 375 N.E.2d 1294, plaintiff sought compensation for personal injuries he suffered when an aluminum ladder manufactured by defendant R. D. Werner Company collapsed while plaintiff was doing electrical work. A jury returned a verdict in plaintiff's favor, and the circuit court denied defendant's judgment *n.o.v.* motion. The appellate court reversed, finding the circuit court erred in failing to grant defendant's motion. On appeal, the supreme court reversed the appellate court and reinstated the verdict. As in *Tweedy*, plaintiff presented no evidence of a specific defect. The court found the following evidence to support the jury verdict:

> "Here the evidence does not show 'abnormal use or reasonable secondary causes.' Gillespie and his aide, finding the ladder to be 'new' and nothing wrong with it, used it while doing electrical work above a drop ceiling. The helper handed tools to Gillespie, who was working almost directly overhead, so he did not have to descend. The various tools, when not in use, were apparently placed on a table in the room in which they were working. Gillespie denied he worked to the side in such a way as to cause an imbalance. The concrete floor was level and covered with tiles. The owner and operator of the company renting the ladder to Gillespie's employer testified that it was his practice 'to check and inspect all equipment' he rented out. Given this evidence, it was reasonable for the jury to conclude there was an absence of abnormal use and that the ladder failed 'to perform in the manner reasonably to be expected in light of' its 'intended function.' [Citation.]"

(*Gillespie*, 71 Ill. 2d at 322-23, 375 N.E.2d at 1296.) (See also *Mote v. Montgomery Ward & Co.* (1984), 125 Ill. App. 3d 839, 466 N.E.2d 593; *Varady*, 153 Ill. App. 3d 1062, 506 N.E.2d 708.) Based on our review of plaintiff's evidence, and consistent with the foregoing authorities, we believe that plaintiff established a *prima facie* case against defendant.

■ Turning to defendant's judgment *n.o.v.* argument, we believe that judgment *n.o.v.* was improperly entered. Our review of the evidence leads us to conclude that it was not so overwhelmingly in favor of the defendant that a verdict in favor of plaintiff cannot stand. Our review of this issue is *de novo*, not deferential.

Much of defendant's evidence could be rejected by the jury for foundation reasons. For example, a wheel which *might* have been the wheel which injured plaintiff was the subject of questioning during trial. Persuasive testimony at trial showed this wheel to have

been manufactured properly. It broke due to post-manufacturing causes. However, because chain of custody was never established, this wheel was not proven to be *the* wheel which injured plaintiff. It is nowhere to be found.

Similarly, defendant offered testimony that a washer was observed to be on the spindle of the grinder which plaintiff was using at the time of his injury. The witness who saw this, however, did not know whether the grinder had been altered in any way or whether it was in fact plaintiff's grinder. This grinder and the alleged washer were not introduced into evidence.

Further, testimony was presented that defendant's shipments of grinding wheels sent to Castings in early September 1978 were speed tested prior to shipment. Arguably, testimony at trial established that speed testing would reveal any manufacturing defect in a grinding wheel so tested. However, no evidence exists that the wheel which caused plaintiff's injury was part of this shipment. Also, plaintiff elicited that, despite speed testing, broken grinding wheels had been returned to defendant.

Defendant's evidence, thus, did not necessarily exclude the existence of a defect. We agree that plaintiff's case was not strong; however, contrary to defendant's argument, defendant's liability was not predicated on speculation and conjecture, and plaintiff did not rely on the "mere occurrence" of the incident to establish the existence of a manufacturing defect. As noted previously, plaintiff's evidence demonstrated more than the mere explosion of defendant's grinding wheel. He testified to being an experienced welder and grinder who was injured while utilizing a new grinding wheel after normally mounting it and using it normally for a short period of time. The acceptance or rejection of plaintiff's testimony was, in the end, for the jury to decide. We will not disturb on review the jury's decision to resolve factual conflicts and credibility determinations against defendant. For the foregoing reasons, we reverse the circuit court's grant of defendant's judgment *n.o.v.* motion and reinstate the verdict.

■ We now address defendant's cross-appeal. Defendant's principal argument is that we should reinstate the jury's 70% finding of misuse. In support, defendant argues that plaintiff's use of the grinding wheel without a guard constituted misuse.

We rely on *Varilek v. Mitchell Engineering Co.* (1990), 200 Ill. App. 3d 649, 558 N.E.2d 365, to affirm the circuit court's vacation of the jury's misuse finding. In *Varilek*, plaintiff was injured when he fell from the roof of a building during construction. Plaintiff

sued the supplier of roof panels, alleging that an oil coating on the panels made them unreasonably dangerous for their intended use. The jury found in favor of plaintiff, but reduced his damages by 63% based on misuse and assumption of risk. The *Varilek* court vacated these findings on the ground they were improper as a matter of law.

As to misuse, the court explained that product misuse is an affirmative defense which operates to reduce a plaintiff's recovery by the amount of fault apportioned to him. Misuse of a product occurs when it is used for a purpose neither intended nor reasonably foreseeable by the defendant based on an objective standard. The manner in which the particular purpose was being accomplished is not an issue under a theory of misuse. *Varilek*, 200 Ill. App. 3d at 666-67, 558 N.E.2d at 377.

In this case, defendant's claim that plaintiff misused the grinding wheel by failing to use a guard is unpersuasive. Plaintiff was clearly doing an act of grinding when injured. Grinding is an intended and reasonably foreseeable use of a grinding wheel. The absence of the guard goes to the manner in which the grinding wheel was being used. If anything, plaintiff was contributorily negligent in using the grinder without a guard. Contributory negligence, however, is not a defense to strict liability. *Simpson v. General Motors Corp.* (1983), 118 Ill. App. 3d 479, 455 N.E.2d 137, *aff'd* (1985), 108 Ill. 2d 146, 483 N.E.2d 1.

Having found the court's vacation of misuse proper, we address defendant's argument that a new trial is required because the question of misuse was so linked to the jury's findings of liability and damages that the vacation of the misuse finding requires the vacation of the others as well. We disagree.

The jury was instructed in this case that it was first to determine the amount of damages to which plaintiff was entitled if it found defendant liable. Next, if the jury believed that plaintiff had misused the product, it was required to "determine what portion or percentage is attributable solely to the plaintiff's conduct in misusing the grinding wheel." The jury's final directive was to "reduce the total amount of plaintiff's damages by the proportion or percentage of plaintiff's misuse of the grinding wheel." This amount was the jury's verdict.

We believe the foregoing instructions demonstrate that our vacation of the jury's misuse finding does not require that we also vacate the jury's liability and damage determinations. These were sep-

arate inquiries under the instructions, and defendant has directed us to no evidence that the jury ignored the instructions it received.

*Varilek v. Mitchell Engineering Co.* (1990), 200 Ill. App. 3d 649, 558 N.E.2d 365, upon which defendant relies, remanded for a new trial because evidence was improperly excluded. The new trial awarded there was *not* predicated upon the interrelated nature of misuse, liability and damages.

■ Defendant's final argument in its cross-appeal is that a new trial is required because the jury received an erroneous jury instruction. Defendant directs this court to the issue instruction predicated on Illinois Pattern Jury Instructions, Civil, No. 400.01 (3d ed. 1992), which informed the jury that plaintiff alleged one or more of the following defects in the grinding wheel: (1) that "when used for its intended purposes, it would crack and or explode"; (2) "it was of inadequate strength and durability to withstand the constant pressures exerted in normal operation"; (3) "it was too weak, brittle and thin to withstand the pressures therein, and the pressures exerted in normal operation"; and (4) "it was placed in the stream of commerce without making proper inspection as to its quality, strength, and suitability for the purpose intended." Defendant alleges that this instruction was erroneously given over its objection because it included allegations of a defect not supported by the evidence. Defendant relies on the instruction committee's comment that only those allegations of plaintiff's complaint which "are supported by the evidence" may be included within the issue instruction.

A party has the right to have the jury instructed on his or her theory of the case. (*Lounsbury v. Yorro* (1984), 124 Ill. App. 3d 745, 751, 464 N.E.2d 866, 870.) While questions as to what issues actually have been raised by the evidence rest with the discretion of the trial court, the court must instruct the jury on all issues reasonably presented by the evidence. *Lounsbury*, 124 Ill. App. 3d at 751, 464 N.E.2d at 870.

The purpose of an issue instruction is to inform the jury of plaintiff's claims and defendant's responses. An issue's instruction is taken from the plaintiff's complaint and the defendant's answer. It is proper so long as it is succinctly stated without undue repetition or emphasis. It is error to give instructions where there is no evidence on which to base the instructions. *Jeffers v. Weinger* (1985), 132 Ill. App. 3d 877, 885, 477 N.E.2d 1270, 1276.

Here, we recognize plaintiff presented no direct evidence of a specific defect and that plaintiff's complaint alleges specific defects.

However, plaintiff's testimony regarding the circumstances surrounding the explosion of the wheel allowed the jury to infer the existence of a specific defect of the types described in plaintiff's complaint. Thus, evidence did exist to support the giving of the instruction.

For the foregoing reasons, we reverse the circuit court of Cook County's grant of defendant's judgment *n.o.v.* motion, but affirm the circuit court's vacation of the jury's misuse finding.

Affirmed in part; reversed in part.

CAMPBELL and O'CONNOR, JJ., concur.