Sixth Division
 October 18, 1996


 

No. 1-95-1411

JAMES E. MURPHY and SUSAN MURPHY, ) Appeal from 
 ) the Circuit Court 
 Plaintiffs-Appellants, ) of Cook County.
 )
 v. )
 )
GENERAL MOTORS CORP. and KUSTOM )
ELECTRONICS, INC., )
 )
 Defendants, )
 )
 and )
 )
PALOS AUTO GLASS & TRIM, INC., ) The Honorable
 ) Jennifer Duncan-Brice,
 Defendant-Appellee. ) Judge Presiding.
 
 
 Justice Leavitt delivered the opinion of the Court:
 On August 19, 1989, the plaintiff, James E. Murphy, was
employed as a police officer by the Village of Palos Park Police
Department (the Department). On that day, his squad car was a
1988 Chevrolet Caprice manufactured by the defendant, General
Motors Corp. (G.M.C.). While driving the car after responding to
a call about a burglar alarm, Officer Murphy drove over a bump in
the road. As he did, he heard a "pop," and the front seat of the
car fell backwards, slid off of its track and collapsed into the
rear seat of the vehicle. Officer Murphy, now facing upward,
lost control of the vehicle, and he was injured as it ran off the
roadway into a ditch.
 Officer Murphy brought this action alleging that various
acts of negligence by the defendants caused his accident. 
Murphy's wife, Susan, brought an action for loss of consortium. 
Specifically, as concerns this appeal, the plaintiffs alleged
that two months before the accident, the defendant, Palos Auto
Glass & Trim, Inc. (Palos Auto), had negligently repaired the car
seat frame. The trial judge entered summary judgment in favor of 
Palos Auto, ruling that the plaintiffs could not establish that
Palos Auto proximately caused the accident. Specifically, the
judge ruled that an affidavit submitted by the plaintiffs's
expert was speculative as to the cause of the accident. The
plaintiffs contend their expert is qualified to testify and that
they have, therefore, presented evidence sufficient to raise a
jury question as to Palos Auto's liability.
 Our review of an order granting summary judgment is de novo. 
Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill.
2d 90, 102, 607 N.E.2d 1204 (1992). Summary judgment is
appropriate only when the pleadings, together with any
depositions, admissions, or affidavits on file demonstrate that
there is no genuine issue of material fact and that the moving
party is entitled to judgment as a matter of law. 735 ILCS 5/2-
1005(c); LaSalle National Bank v. Skidmore, Owings & Merrill, 262
Ill. App. 3d 899, 902, 635 N.E.2d 564 (1994). We construe all
reasonable inferences to be drawn from the facts in a light most
favorable to the non-moving party. LaSalle National Bank, 262
Ill. App. 3d at 902. Although the respondent need not prove his
case at the summary judgment stage, he is required to present
evidentiary facts to support the elements of his cause of action.
Helms v. Chicago Park District, 258 Ill. App. 3d 675, 679, 630
N.E.2d 1016 (1994). Summary judgment in favor of the defendant
is appropriate where the plaintiff has not established an
essential element of the cause of action. Webber v. Armstrong
World Industries, Inc., 235 Ill. App. 3d 790, 795-96, 601 N.E.2d
286 (1992); Ray Dancer, Inc., v. DMC Corp., 230 Ill. App. 3d 40,
50, 594 N.E.2d 1344 (1992).
 Palos Auto's motion for summary judgment asserted that
because the car seat had been destroyed, the plaintiffs could not
prove that its conduct in repairing the seat frame proximately
caused the plaintiffs' injuries. Of course, in order to prevail
on a negligence claim, a plaintiff must show that a defendant's
breach of a duty proximately caused the plaintiff's injuries.
Ward v. K-Mart Corp., 136 Ill. 2d 132, 140, 554 N.E.2d 223
(1990). To defeat a motion for summary judgment, a plaintiff
must establish that there is a reasonable certainty that the
defendant's acts caused the injury. Schultz, 222 Ill. App. 3d at
540. In this regard, the record reveals the following.
 Approximately two months prior to Officer Murphy's accident,
the Department had contracted with Palos Auto to repair the
driver's seat in Murphy's squad car. Robert Norris, the owner of
Palos Auto, testified at his deposition that he had examined the
seat frame before repairs were undertaken. His company had
repaired this type of seat before, and he was familiar with it. 
Norris stated that the seat his company repaired was a G.M.C.
seat. Without consulting G.M.C.'s product specifications, an
employee of Palos Auto repaired the seat back by performing a
"mig" weld on its frame. G.M.C's product specifications provide
that "spot resistance" welding should be used to repair these
seats. 
 Following the accident, the squad car was taken to an auto
repair business owned by Raymond Holzinger. Holzinger testified
at his deposition that when the vehicle arrived, he examined the
front seat and concluded that due to its condition, it could not
be repaired. Therefore, the front seat was removed from the
vehicle and a replacement front seat was installed. After
removing the seat, Holzinger disposed of it. Before he discarded
it, however, he examined it and discovered that repair work had
previously been performed on the seat frame. Specifically, he
noted an apparent break in the frame that had been repaired by a
weld. Although the weld had not broken in the accident, there
was a "bend" in the frame one to two inches from the point of the
weld. 
 In their opposition to Palos Auto's motion for summary
judgment, the plaintiffs presented the affidavit of Dr. Crispin
Hales, an engineering and metallurgy expert. Hales reviewed the
plaintiffs' complaint, the depositions of Holzinger, Norris and
Murphy, in addition to the engineering specifications for the
seat frame issued by General Motors. These specifications
included information about the seat frame's metal composition and
physical properties. The specifications also indicated that only 
spot-welding should be used to repair such seats. Based upon the
above information, Hales was of the opinion that assuming the
seat frame had been manufactured in accordance with G.M.C.'s
specifications, the mig weld performed by Palos Auto would have
reduced the strength of the seat frame and caused it to fail. 
Hales also offered a second opinion, based on the physical
properties of the seat frame, that the defendant should have
replaced rather than repaired the seat.
 The trial judge "struck" Dr. Hales' affidavit in its
entirety because she considered his opinions to be speculative. 
She reasoned that because the seat was unavailable, the
plaintiffs could not presume the fact that the seat had, in fact,
been manufactured according to G.M.C.'s specifications. The
judge ruled that, as a result, the plaintiffs were precluded from
relying upon Hales' opinion as to the propriety of mig-welding. 
Therefore, the plaintiffs could not establish that Palos Auto's
negligence reduced the strength of the seat frame. The trial
judge did not state any reason as to why Hales' second opinion
was inadmissible. Specifically, the judge found:
 "[W]ithout the seat frame this case is thrown into
 a speculative arena ... The problem with the expert's
 affidavit is that one has to presume that the seat back
 was manufactured in accordance with the manufacturer's
 drawings, specifications, and additional information
 provided by GM. Without the seat back, how can this
 presumption be made? *** He [the plaintiffs' expert]
 cannot make that presumption that this was built in
 accordance with specifications because he hasn't seen
 it, because the seat frame is gone. *** I don't think
 his testimony is competent because it presumes facts
 that cannot be supported by the evidence."
In denying the plaintiffs' motion to reconsider the entry of
summary judgment, the judge stressed that the seat frame had been
innocently destroyed; hence, the grant of summary judgment was
not to be interpreted as an imposition of a sanction against the
plaintiffs.
 Supreme Court Rule 191(a) (134 Ill. 2d R. 191(a)), directs
that affidavits in opposition to a motion for summary judgment
"shall not consist of conclusions but of facts admissible in
evidence; and shall affirmatively show that the affiant, if sworn
as a witness, can testify competently thereto." Here, the trial
judge concluded that Hales' opinion was not based on provable
facts - that it was a conclusion. Implicit in the judge's ruling
is the assumption that the plaintiffs could not demonstrate to
the trier of fact that the seat frame was manufactured in
accordance with engineering specifications issued by G.M.C. In
the absence of proof regarding this predicate fact, Hales'
opinion that Palos Auto's repair work caused the seat to collapse
was, indeed, speculative and had no basis in admissible facts. 
However, we do not believe that absence of the car seat compels
the result reached by the judge.
 True, an expert witness's opinion cannot be based on
conjecture or speculation (Dyback v. Weber, 114 Ill. 2d 232, 244,
500 N.E.2d 8 (1986)); however, an expert's testimony is "but 'the
opinion of the witness given on facts assumed to be true,'" and
it is for the trier of fact to determine the facts. Damron v.
Micor Distributing, Ltd., 276 Ill. App. 3d 901, 911, 658 N.E.2d
1318 (1995) quoting McKenzie v. S.K. Hand Tool Corp., 272 Ill.
App. 3d 1, 8, 650 N.E.2d 612 (1995). In reaching the first of
his two opinions, Hales assumed a fact -- that the seat was
manufactured according to design specifications. The plaintiffs
did not offer Hales' affidavit for the purpose of proving that
the seat was manufactured properly. Nonetheless, the trial judge
concluded that the fact assumed by Hales could not be proved. We
believe the record contains sufficient evidence to raise a jury
question as to that fact. It is this evidence which Hales relied
upon in forming his opinion that the defendant's mig-weld of the
seat contributed to its failure. Therefore, his first opinion
was admissible.
 Although this is not a product liability case as to the
defendant, proof as to whether the seat was defectively
manufactured implicates aspects of product liability
jurisprudence. In such cases, "the absence of the product at
trial is not fatal to the plaintiff's cause." Samansky v. Rush-
Presbyterian-St. Luke's Medical Center, 208 Ill. App. 3d 377,
389, 567 N.E.2d 386 (1990). Indeed, experts in product liability
cases often rely on circumstantial evidence to form their
opinions as to whether a product is defective. E.g. H & H Sand
and Gravel Haulers Co. v. Coyne Cylinder Co., 260 Ill. App. 3d
235, 249, 632 N.E.2d 697 (1994); Sanchez v. Firestone Tire &
Rubber Co., 237 Ill. App. 3d 872, 874, 604 N.E.2d 948 (1992). 
Here, there is circumstantial evidence which is admissible to
support Hales' opinions. Specifically, Hales reviewed G.M.C.'s
designs and specifications for the type of seat which was
installed in Officer Murphy's car. He also reviewed the
depositions of Raymond Holzinger, James Murphy and Robert Norris.
 Norris' deposition testimony reveals that the Department
brought Officer Murphy's squad car to him for repair several
weeks before the accident. The invoice reflected that the repair
occurred on June 26, 1989, less than two months before the
accident. Norris stated unequivocally that the seat his company
repaired was a G.M.C. seat. He had repaired over 50 G.M.C. seats
previously, including 25 all-steel seats of the type involved in
this case. He had repaired at least three or four 1988 Caprice
bucket seats. 
 Norris examined the seat frame before repairs were
undertaken and concluded that the seat frame had "broken." By
broken, Norris meant that "it was no longer functional as it was
designed to function." He did not know whether the frame was
actually broken in two or just bent. He did observe that the
seat was "leaning back" at a 45 degree angle and was loose to the
extent that it could be moved manually 20 to 25 degrees in either
direction. We note also that at his deposition, Raymond
Holzinger stated that when he examined the seat after Officer
Murphy's accident, he noted that the seat frame had been welded,
which indicated to him that it had previously broken. From these
statements, a jury could infer that the seat was not in the
condition in which G.M.C. delivered the car to the Department.
 Such an inference is further supported by Norris' statement
that, based on his experience as an auto repairer, the reason the
seat frame had broken was because the officer (not Officer
Murphy) who had been using it until that time weighed more than
the seat frame could withstand. Although Norris was unaware of
any G.M.C. recommended weight limit for the seat, at the time he
repaired the seat, he suggested to the Department that the
officer no longer drive the vehicle "because of his girth." Seat
frames break for various reasons: "[s]ometimes they break as a
result of the size of the person, sometimes they'll break as a
result of an accident. Sometimes they'll break as a result of
wearing out, portions of the seat will wear out and break." 
Nowhere in Norris' deposition is there any indication that he or
his employee that repaired the seat noticed a defect in the seat
which was unrelated to Norris' belief that the cause of the
seat's failure was the excessive weight of the officer who drove
the car before the defendant repaired it. From this, a jury
could conclude that the seat was originally broken in this
manner. Also, Holzinger stated that he noticed a "bend" in the
seat frame located within two inches of the weld. With this
evidence, the jury could rely on the opinion of Hales to conclude
that the defendant's actions in repairing the seat by means of a
mig-weld weakened the frame, thus causing the plaintiff's
injuries. Thus, we hold that Hales' opinion about use of a mig
weld was admissible.
 We also hold that Hales was competent to testify as to his 
second opinion, one which is not predicated upon whether the seat
was manufactured properly: that a seat of the type involved here
should always be replaced, rather than repaired, after breaking. 
Hales reviewed G.M.C.'s design specifications to reach his second
opinion. Furthermore, Norris, in his deposition, acknowledged
that replacement is often the appropriate action to take in
regard to a broken seat. He stated that when one of his
mechanics looks at a broken seat, he determines whether to
recommend complete replacement or mig-welding of the seat. 
Indeed, some breaks, such as in a "track assembly" (the mechanism
that allows the seat to move back and forth), would prompt Norris
to probably automatically recommend replacement. Norris would
convey that recommendation to the owner of the car. Ordinarily,
if Norris recommended to replace the seat, but the owner insisted
on repair, Norris would make a note reflecting this on the bill. 
The bill covering repair of the vehicle contains no such
notation. We believe there is sufficient evidence in the record
to raise a genuine issue of material fact as to whether the
defendant should have replaced, rather than repaired the seat. 
Thus, on this basis alone, the trial judge should not have
stricken the expert affidavit.
 For all of the foregoing reasons, the trial judge erred in
striking the affidavit of the plaintiff's expert. As a result,
the trial judge erred in entering summary judgment for the
defendant. Therefore, the judgment is reversed, and this cause
is remanded for further proceedings.
 Reversed and remanded.
 McNamara, J., concurs.
 Zwick, P.J., dissents.
 PRESIDING JUSTICE ZWICK, dissenting:
 I respectfully disagree with the majority's conclusion that
the trial court improperly entered summary judgment in favor of
defendant Palos Auto. In my view, it was required.
 To defeat the motion for summary judgment, plaintiffs were
obligated to present evidentiary facts establishing a reasonable
certainty that the actions of Palos Auto caused the injury. See 
Bellerive v. Hilton Hotels Corp., 245 Ill. App. 3d 933, 936, 615
N.E.2d 858 (1993); Chmielewski v. Kahlfeldt, 237 Ill. App. 3d
129, 137, 606 N.E.2d 641 (1992). The plaintiffs in the instant
case must fail in this endeavor due to the unavailability of the
subject seat frame. In light of plaintiffs' expert opinion, the
allegation of negligence asserted here against Palos Auto
necessarily required proof of the absence of a manufacturing
defect in the seat frame. This proof could never have been
presented by plaintiffs where the frame had been discarded prior
to a thorough examination. It must be noted that the trial court
had previously entered summary judgment in favor of GMC, the
manufacturer of the seat frame, based upon plaintiffs' inability
to prove the existence of a manufacturing defect. Because
plaintiffs would never be able to prove that the seat frame had
been manufactured according to the design specifications, on
which their expert's opinion was premised, the trial court
correctly entered summary judgment in favor of Palos Auto. See
Fooden v. Board of Governors, 48 Ill. 2d 580, 587, 272 N.E.2d 497
(1971).
 As the majority acknowledges, this is not a product
liability case, and such precedents have no bearing on the case
at bar. However, even if the principles governing product
liability actions were applicable here, the trial court's ruling
would still be correct.
 Although a product liability claim may be proven by direct
or circumstantial evidence (see McKenzie v. S K Hand Tool Corp.,
272 Ill. App. 3d 1, 7, 650 N.E.2d 612 (1995); Varady v. Guardian
Co., 153 Ill. App. 3d 1062, 1066-67, 506 N.E.2d 708 (1987);
Ralston v. Casanova, 129 Ill. App. 3d 1050, 1059-60, 473 N.E.2d
444 (1984)), it is clear that preservation of the allegedly
defective product is of the utmost importance in both proving and
defending against a strict liability action. Ralston, 129 Ill.
App. 3d at 1057. The Illinois Supreme Court, while considering
a claim for negligent spoliation of evidence, recently recognized
that the loss of an allegedly defective product prior to testing
would preclude the plaintiff from proving a products liability
claim. Boyd v. Travelers Insurance Co., 166 Ill. 2d 188, 196-97,
652 N.E.2d 267 (1995).
 When circumstantial evidence is relied upon in a product
liability action, it must justify an inference of probability, as
distinguished from mere possibility, because liability cannot be
predicated on speculation, guess, or conjecture. McKenzie, 272
Ill. App. 3d at 7; Varady, 153 Ill. App. 3d at 1067. Summary
judgment in favor of the defendant is appropriate where the
plaintiff is unable to prove that the injuries were proximately
caused by a defect which existed at the time the product left the
manufacturer's control. See Loy v. Firestone Tire and Rubber
Co., 168 Ill. App. 3d 503, 505-07, 522 N.E.2d 848 (1988); Shramek
v. General Motors Corp., 69 Ill. App. 2d 72, 77-78, 216 N.E.2d
244 (1966)). Thus, even under product liability principles, the
trial court's actions were correct.
 Moreover, the majority holds that the trial court erred in
entering summary judgment because Hales was competent to testify
as to his "second opinion" that a seat of the type involved here
should always be replaced, rather than repaired. This issue was
not raised or argued by appellants in their briefs. In my view,
the majority exceeded its proper role as it is neither the
function nor the obligation of this court to act as an advocate
or search the record for error. Mielke v. Condell Memorial
Hospital, 124 Ill. App. 3d 42, 48-49, 463 N.E.2d 216 (1984). 
Accordingly, this contention should be deemed waived and should
not serve as the basis for reversal of the trial court's order.
 For the foregoing reason, I would affirm the decision of the
circuit court of Cook County.