BILLIE GILLESPIE, Plaintiff-Appellee, *v.* R. D. WERNER CO., INC., Defendant-Appellant.—(ALTON TRAILER & EQUIPMENT RENTAL COMPANY, Defendant.)

Fifth District   No. 75-318

Opinion filed October 29, 1976.—Rehearing denied December 16, 1976.

G. J. MORAN, J., dissenting.

Wagner, Bertrand, Bauman & Schmieder, of Belleville, for appellant.

G. Edward Moorman, of Smith, Allen, Moorman & Larson, of East Alton, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff, Billie Gillespie, brought an action for personal injuries he sustained during a fall from a ladder manufactured by defendant R. D. Werner Co., Inc., and allegedly leased from codefendant Alton Trailer & Equipment Rental Co. The case proceeded to trial under alternative theories of strict liability in tort, breach of implied warranty of merchantability, and negligence. At the close of plaintiff's case in chief the trial court granted a motion for a directed verdict on the negligence count. At the close of all the evidence defendants moved for a directed verdict on the remaining two counts, but the motion was denied. The jury returned a verdict in favor of plaintiff as to defendant Werner but against plaintiff as to defendant Alton Rental and assessed damages at $72,500. Defendant Werner then filed a post-trial motion for judgment notwithstanding the verdict or a new trial. The motion was denied and judgment was entered on the verdict. Werner has appealed.

In this appeal Werner makes two contentions: (1) that the evidence was insufficient to establish a prima facie case and, therefore, the trial court erred in refusing to direct a verdict or enter judgment *n.o.v.;* and (2) that the trial court erred in refusing to grant a new trial following a comment made at the trial about the cancellation of Alton Rental's insurance after the injury to plaintiff. Our disposition of this case makes it necessary to discuss only the first of these contentions.

The facts giving rise to the instant litigation are as follows. On July 19, 1972, plaintiff was working as an electrician, installing wiring at McKinley School in St. Louis, Missouri. James R. Ford, an electrician's helper, was the only other person present at the work site. The job required the men to install wiring in a ceiling above a false or "drop" ceiling. Plaintiff and Ford had set up a ladder to be used in doing the work. The ladder was a Werner "Saf-T-Master Mark 3, Model 388," aluminum, five-way combination ladder and had been set up by plaintiff and Ford for use as a stepladder. When used as a stepladder, it was eight feet high.

Plaintiff and Ford observed the ladder as they were setting it up. Neither man saw anything wrong with the ladder. Ford had also used the ladder on that day, prior to plaintiff's use which resulted in the fall.

The floor on which the ladder stood was vinyl-covered concrete and

was level. Each siderail, or leg, of the ladder had a nonskid, vinyl-plastic foot or pad on its bottom. Plaintiff climbed the stepladder, through an opening in the drop ceiling, and stood on the first or second step from the top of the ladder. The ladder was level and stable.

Plaintiff testified that at the time of the fall, he was reaching overhead with both arms to install a locknut on a clamp connector in a box previously attached to the ceiling. "[T]he next thing [he] knew, [he] was on the floor." Plaintiff testified that the ladder had fallen to his left and he had fallen to his right. As he was falling his left elbow caught on the drop ceiling, causing him to land on the floor on his right elbow instead of his feet. Plaintiff testified that he did not strike the ladder as he fell.

Ford testified that at the time of the fall he was standing near the foot of the ladder in order to be able to hand plaintiff tools and materials. As plaintiff stood on the ladder, Ford could not see what plaintiff was doing, because the drop ceiling blocked his view. The "ladder started movin'," then shot right out from under" plaintiff to the left. Plaintiff fell to the right and "came down through all the drop ceiling." After the accident Ford observed that the bottom portion of the left front siderail of the ladder was bent or turned in and twisted.

The ladder itself and several pictures of the ladder were admitted into evidence at trial. Three expert witnesses testified at trial concerning the question whether the bending or buckling in the leg of the ladder had resulted from a structural defect. Harry Duffey, an associate professor of engineering testifying in behalf of plaintiff, expressed his opinion "that the left front rail buckled and that for this to buckle there had to be prior damage and that the damage would be either classified as prior structural damage or structural defect." When asked on cross-examination whether the observable damage to the ladder could have been caused by a human body falling on that portion of the ladder, Mr. Duffey responded, "If he can properly get a part of his body there, I guess it could possibly happen."

Lawrence Kocina, chief engineer for Werner, and Fred Deppe, a metallurgist, testified as defendant's expert witnesses. In their opinions the ladder, as manufactured, exceeded all applicable safety standards as to size, design, and strength. In Deppe's opinion the bending or buckling in the siderail had been caused by an "impact loading from some object which had fallen upon it." Deppe agreed that the object could have been human, as well as nonhuman. In Kocina's opinion the bend or buckle had to have occurred when not all four feet were on the floor, and it could not have been caused by a static force but only by an impact force.

The most significant aspect of plaintiff's evidence of a prior structural defect in the ladder came from the testimony of Kocina, who was initially called to testify in plaintiff's case-in-chief under section 60 of the Civil

Practice Act (Ill. Rev. Stat., ch. 110, par. 60), and who then again testified in defendant Werner's case-in-chief. Kocina stated that the ladder which had been used by plaintiff had been manufactured by Werner in 1971. He identified the various parts of the ladder and explained the reasons for the particular design of the ladder. In particular, Kocina pointed out that each of the two siderails, or legs, of the step portion of the ladder (front siderails) consisted of a "web," or central portion, with a "flange," or lateral portion on either side. Each step was attached to the siderails by rivets. Each step was approximately 12 inches above or below the next step. The two uppermost steps of the front or step side of the ladder were the same width, thus making the siderails parallel between those two steps. However, at the second uppermost step the siderails were bent outward during manufacture at an angle of "four degrees and eleven minutes" to produce a flaring effect and give the ladder greater stability. Each step below the second uppermost step increased successively in width 1¾ inches per step.

Kocina stated that prior to 1972 Werner experienced a manufacturing problem in constructing this type of ladder. The problem was that a slight crack would "occasionally" appear in a flange in the area where the siderail was bent outward to produce the flaring effect. The crack occurred in the flange at the point where the bend was the greatest, that is, where the material was stretched the most. Kocina stated that in 1973, two years after the ladder in question was manufactured, the width of the flange was increased, and he thought this had corrected the problem.

■■ In a product liability case brought against a manufacturer the plaintiff has the burden of proving: (1) that an injury was proximately caused by a condition or defect in the product; (2) that the condition or defect was an unreasonably dangerous one; and (3) that the condition or defect existed at the time the product left the manufacturer's control. (*Suvada v. White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182; *Schmidt v. Archer Iron Works, Inc.*, 44 Ill. 2d 401, 256 N.E.2d 6, 51 A.L.R.3d 1339.) The elements of proof required are the same whether the theory is one of strict liability or one of implied warranty. *Bollmeier v. Ford Motor Co.*, 130 Ill. App. 2d 844, 265 N.E.2d 212; *Hepler v. Ford Motor Co.*, 27 Ill. App. 3d 508, 327 N.E.2d 101; 1 American Law of Products Liability §1:6 (2d ed. 1974).

In the instant case there was no direct evidence of a prior defect in the ladder in question. The only evidence from which the existence of a prior defect might have been inferred came in the testimony of Duffey and Kocina. In the opinion of Duffey, the post-accident condition of the ladder indicated that there must have been either prior structural damage or a prior structural defect in the ladder. But Duffey's opinion was not unequivocal; for he admitted that it was possible that the bent and twisted

condition of the ladder had resulted from a human body falling onto the ladder. Kocina's testimony was that some Werner ladders manufactured at the same time as the ladder in question had a tendency to develop a slight crack in the flange at the point of the second uppermost step. According to Kocina, the crack in the flange would result from stress placed on the siderail during the manufacturing process (at the point of the second uppermost step) to bend the siderail *outward* and produce a flaring effect which would enhance stability.

There was no evidence that ladders of this type had a tendency to develop a crack in the flange at the point of the lowest step. Moreover, the siderails were, from the bend at the second uppermost step all the way to the bottom or foot of the siderail, straight pieces. That is, they were not subjected to any outward bending during the manufacturing process at any point other than at the second uppermost step. And although the siderails of this type of ladder were flared *outward* at an angle of four degrees and eleven minutes from vertical, the particular damage to the ladder in question consisted of bending and twisting in an *inward* direction. As Kocina explained, since the front siderails were flared outward, if all four siderail feet were resting on the floor, there would be no forces acting to push the lowermost portion of the front siderails in an inward direction.

In the instant case the jury found that a prior defect had existed in the ladder, which had proximately caused plaintiff's injury. The problem with the jury's conclusion in the instant case is that it could only have been reached by a building of inference upon inference. First of all, in order to conclude that this particular ladder had a defect or unreasonably dangerous condition at the time it left Werner's control, it is necessary to infer that because the siderail flange of some ladders of this type had a tendency to crack when bent outward at the second uppermost step, the siderails of this particular ladder had a similar tendency. That inference is certainly a permissible one; however, by itself it is not sufficient to establish liability. Rather, it is necessary to infer further that the tendency exhibited at the point of the second uppermost step, where the siderail was placed under stress and bent outward during manufacture, could and also did manifest itself in the siderail at the point of the lowest step, where the siderail was a straight, that is, unbent piece. Moreover, before this defect could be found to have been the proximate cause of plaintiff's injury, the additional inference has to be made that the tendency of the flange to crack when the siderail was bent outward at an angle of four degrees and eleven minutes during the manufacturing process could result in the type of inward bent and twisted condition of this particular siderail, despite the absence of a force acting on the siderail in that direction.

It has often been stated in this State, as well as in other jurisdictions, that it is improper to reach a conclusion in law by basing an inference on an inference. (*Nystrom v. Bub,* 36 Ill. App. 2d 333, 184 N.E.2d 273; *Zide v. Jewel Tea Co.,* 39 Ill. App. 2d 217, 188 N.E.2d 383; see numerous cases compiled at Annot., 5 A.L.R.3d 100, §3[a] (1966); 29 Am. Jur. 2d *Evidence* §166 n. 2 (1967); and 1 Wigmore on Evidence §41 n. 2 (1940).) The rule has, however, often been limited or criticized or rejected by other authorities. (See *Sturm v. Employers' Liability Assurance Corp.,* 212 Ill. App. 354; *Plodzien v. Segool,* 314 Ill. App. 40, 40 N.E.2d 783; *Grand Trunk Western R.R. Co. v. M.S. Kaplan Co.,* 43 Ill. App. 2d 230, 193 N.E.2d 456, 7 A.L.R.3d 1289; see numerous cases compiled at Annot., 5 A.L.R.3d 100, §4 (1966); 29 Am. Jur. 2d *Evidence* §166, n. 1 (1967); and 1 Wigmore on Evidence §41, n. 4 (1940).) Wigmore, in criticizing the rule, states, "There is no such orthodox rule; nor can be. If there were, hardly a single trial could be adequately prosecuted." (1 Wigmore on Evidence §41, at 435 (1940).) Rejecting the broad statement of the rule, the court in *Sturm* held that only remote inferences were objectionable. The court stated, "Of course, an inference from an inference, and then a third and fourth may, under certain circumstances, be admissible [citation], but the more remote the inference the more enfeebled its probative force." (212 Ill. App. 354, 363.) Similarly, referring to the rule the court in *Grand Trunk Western R.R. Co.* stated:

> "Such a sweeping exclusionary formula is of doubtful analytical value in the decisional process. It serves only as a convenient repository for rejected inferences.* * * [T]he pertinent consideration is whether the inference based on an inference is reasonable." (43 Ill. App. 2d 230, 242-43, 193 N.E.2d 456, 462.)
> This statement was repeated and applied in *Garrett v. S.N. Nielsen Co.,* 49 Ill. App. 2d 422, 200 N.E.2d 81.

■■ In our opinion, whether we apply the simple "no inference upon inference" rule or adopt the rule prohibiting only "remote inferences" or the rule requiring that all inferences be reasonable, our conclusion in this case must be that the proof was insufficient to establish Werner's liability. The evidence showed only that a crack occasionally occurred in the siderail flange of some of the ladders of this type at the point where the siderail was bent outward during manufacture. To conclude from that evidence that a siderail flange of this particular ladder had a tendency to crack at the point where the lowermost step was attached, despite the fact that the siderail was, at that point unbent during manufacture, and that the tendency to crack could result in an inward bending and twisting of the siderail, despite the fact that it was flared outward, is to engage in unreasonable speculation. A jury cannot be allowed to predicate its

verdict on mere conjecture or surmise. *Tiffin v. Great Atlantic & Pacific Tea Co.,* 18 Ill. 2d 48, 162 N.E.2d 406; *Larson v. Thomashow,* 17 Ill. App. 3d 208, 307 N.E.2d 707.

We have taken note of the cases of *Tweedy v. Wright Ford Sales, Inc.,* 31 Ill. App. 3d 72, 334 N.E.2d 417, and *Bollmeier v. Ford Motor Co.,* 130 Ill. App. 2d 844, 265 N.E.2d 212. *Tweedy* and *Bollmeier,* upon which *Tweedy* relies, are not controlling of the case we consider for they are distinguished by the factual setting from which they arose. *Tweedy* and *Bollmeier* both involved auto accidents resulting from some malfunction in an automobile mechanism. In *Bollmeier* the steering mechanism malfunctioned; in *Tweedy* the braking system malfunctioned. The two cases hold that where a malfunction occurs in an auto and injury results, the plaintiff does not have to prove the specific defect which caused the malfunction but in both cases there was no question that the injury resulted from the malfunction.

The case we consider involved a completely different problem. Here there is a question whether there was a defect at all. There was no malfunction of any mechanism, such as a braking or steering system. Rather, in this case all we have is a post-accident observable bend in a siderail of a ladder. The question is, did a weak or cracked flange cause this bend and plaintiff's fall or did plaintiff's fall cause the bend independently of any weakness or crack (*e.g.,* did plaintiff fall onto the ladder?). *Suvada* establishes that before a plaintiff can recover he must show that a defect proximately caused his injury. *Bollmeier* and *Tweedy* do not eliminate the requirement of proof of this element. If they are read to eliminate such requirement, they are wrong in light of *Suvada.*

Our attention has also been called to the case of *Coyne v. John S. Tilley Co.* (Mass. 1975), 331 N.E.2d 541, a case factually similar to the one under consideration. In rejecting plaintiff's claim against the manufacturer and wholesaler of an aluminum ladder for injuries received when a leg of the ladder assertedly collapsed, the court stated:

> "Without further evidence, '[i]t cannot be said, when a stepladder breaks, that the fact of its breaking by common experience points more closely to a defect in the appliance than to some carelessness on the part of the person using it.' [Citation.]
>
> * * *
>
> '[T]he inference of negligence does not point to the defendant until the plaintiff himself has been eliminated as a cause.' [Citation.] 'The plaintiff need not exclude every possible cause for his injuries. He is only required to show a greater likelihood that his injury was caused by the defendant's negligence than by some other cause.' " (331 N.E.2d 541, 547.)

The *Tweedy, Bollmeier* and *Coyne* cases are not contradictory of the general rule stated in Restatement (Second) of Torts §402 A, Comment g (1965), which states:

> "The burden of proof that the product was in a defective condition at the time that it left the hands of the particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained."

■■ This case came before us as an appeal from the denial of a motion for judgment *n.o.v.* Accordingly, we should not reverse unless it may fairly be said that all the evidence viewed most favorably to plaintiff so overwhelmingly favors Werner that no contrary verdict based on this evidence could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504.) This is not to say, however, that some slight evidence, which loses its significance when viewed in the context of all the evidence, should be given an enhanced value merely to support a verdict. See *People v. Rosochacki*, 41 Ill. 2d 483, 244 N.E.2d 136; *Belleville National Savings Bank v. General Motors Corp.*, 20 Ill. App. 3d 707, 313 N.E.2d 631.

The evidence in this case, when viewed most favorably to plaintiff, so overwhelmingly favors defendant Werner that a verdict for plaintiff based upon this evidence should never stand. The trial court erred in refusing to grant Werner's motion for judgment *n.o.v.* Accordingly, the judgment of the trial court in favor of plaintiff and against defendant Werner is reversed without remanding for a new trial.

Reversed.

EBERSPACHER, J., concurs.

Mr. JUSTICE GEORGE J. MORAN, dissenting:

In *Dunham v. Vaughan & Bushnell Mfg. Co.*, 42 Ill. 2d 339, our supreme court held that those products are defective which are dangerous because they fail to perform in a manner reasonably to be expected in light of their nature and intended function. In this case the ladder collapsed, so it failed to perform in the manner reasonably to be expected in light of its use. Therefore, it is defective according to the reasoning of the supreme court. The court also went on to say that liability would be upheld although there was no evidence of defect at the time it left the manufacturer's control and it had been used for 11 months where it was represented as "best quality" and was used in a manner customary in plaintiff's community. This ladder which collapsed with plaintiff was represented to be a safety ladder. The record discloses it was a "Safe-T-

Master Alumiladder, New 1971 Line." It was firmly planted on concrete and was being used in the manner in which it was supposed to be used. Both plaintiff and his fellow workmen testified that the ladder appeared to be new, that they looked at it before they used it and there was no evidence of any apparent defects in the ladder.

In the case of *McCarthy v. Florida Ladder Co.* (Fla. App. 1974), 295 So. 2d 707, which I think is almost exactly in point, the court said:

> "In the proper case, a defect can be inferred from the fact that a new product performs in such a manner as to preclude any other reasonable inference which would suggest that the product was not defective." 295 So. 2d 707, 709-10.

In *Bollmeier v. Ford Motor Co.*, 130 Ill. App. 2d 844, this court said:

> "[D]irect or circumstantial evidence which tends to prove that the product failed to perform in the manner reasonably to be expected in the light of its nature and intended function, * * * is sufficient to make a *prima facie* case on this issue." 130 Ill. App. 2d 844, 851.

In *Coyne v. John S. Tilley Co.*, 331 N.E.2d 541 (Mass. 1975), the court said:

> "We believe that a trier of fact could infer as a matter of common knowledge that a relatively new aluminum stepladder would not collapse in such a way that one of its legs was bent inward at a 45° angle in the course of usage unless someone had been negligent. Plainly, a properly fabricated and designed aluminum ladder * * * would not collapse if put to the use for which it was intended." (331 N.E.2d 541, 545.)

In holding there was sufficient evidence "to warrant exclusion of negligence by intermediate handlers as a cause of the ladder's collapse," the court said:

> "The trier of fact could deem it improbable that a ladder which appeared bright, new and defect-free to these observers had been damaged significantly by handling between the time it left the manufacturer's control and the time of the plaintiff's use." 331 N.E.2d 541, 546.

In my opinion the result reached by the majority is also directly contrary to the Supreme Court's holding in the recent case of *Tweedy v. Wright Ford Sales, Inc.*, 64 Ill. 2d 570.