| DARLENE WARD PELLECER, | * | NO. 2023-CA-0694 |
|---|---|---|
| INDIVIDUALLY AND AS THE | | |
| ADMINISTRATOR OF THE | * | |
| ESTATE OF CARLOS F. | | COURT OF APPEAL |
| PELLECER, AND CYNTHIA | * | |
| PELLECER KEPPLER, LINDA | | FOURTH CIRCUIT |
| PELLECER SEWARD, AND | * | |
| BONNIE PELLECER PEREZ | | STATE OF LOUISIANA |

* * * * * * *

VERSUS

WERNER CO., A
CORPORATION OF
DELAWARE, ET AL.

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-04936, DIVISION "J"
Honorable D. Nicole Sheppard,
* * * * * *
**Judge Karen K. Herman**
* * * * * *
(Court composed of Judge Sandra Cabrina Jenkins, Judge Paula A. Brown, Judge
Karen K. Herman)

Gary M. Carter, Jr.
THE CARTER FIRM
2401 Westbend Pkwy., Suite 3070
New Orleans, Louisiana70114

        COUNSEL FOR PLAINTIFFS/APPELLEES

Martin A. Stern
Leigh Ann Schell
Raymond P. Ward
ADAMS AND REESE, LLP
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70193

John E. W. Baay, II
Nicholas S. Bergeron
GIEGER LABORDE & LAPEROUSE, LLC
701 Poydras Street, Suite 4800

New Orleans, Louisiana 70139

COUNSEL FOR DEFENDANTS/APPELLANTS

**AFFIRMED**
**October 16, 2024**

This appeal stems from a wrongful death/products liability action initiated by Darlene Ward Pellecer, individually and as the administrator of the estate of Carlos F. Pellecer ("Mr. Pellecer"), Cynthia Pellecer Keppler, Linda Pellecer Seward, and Bonnie Pellecer Perez (collectively "Plaintiffs") against numerous defendants including the appellants, Werner Co., a Delaware corporation ("Werner Co. (DE)"), and New Werner Holding Co., Inc. ("New Werner") (collectively the "Werner Defendants").

The Werner Defendants appeal the December 21, 2022 final judgment on a jury verdict, the denial of their motion for directed verdict, and the November 17, 2023 judgment denying their motion for judgment notwithstanding the verdict ("JNOV")/alternative motion for new trial. [1] The Werner Defendants also appeal the denial of their motion for summary judgment rendered November 5, 2021. For the reasons set forth below, we affirm the judgments.

---

[1] The Werner defendants initially filed a motion for JNOV/ alternative motion for new trial on January 5, 2023. Plaintiffs sought to strike those motions as untimely. After numerous delays in the trial court, judgment was rendered July 21, 2023, granting Plaintiffs' motion to strike. This Court reversed that ruling and remanded to the trial court. *Pellecer v Werner Co*., 2023-0513 (La. App. 4 Cir. 9/7/23), 372 So.3d 819, *writ denied*, 2023-1279 (La. 7/27/23), 370 So.3d 1068. Judgment was ultimately rendered November 17, 2023, denying the Werner Defendants' motion for JNOV and alternative motion for new trial.

1

**STATEMENTS OF FACT AND PROCEDURAL HISTORY**

Plaintiffs filed a petition for damages alleging that on November 25, 2019, Mr. Pellecer was using an aluminum extension ladder manufactured by the Werner Defendants to replace an outside light located at 2011 General Pershing Street in New Orleans, when the ladder buckled, split, or otherwise failed, causing Mr. Pellecer to fall. Mr. Pellecer died two days later due to blunt force head injuries. He was survived by his wife of fifty-five years and his three daughters.

No one witnessed the accident. However, the evidence has demonstrated that at the time of the accident, the fully-extended ladder was resting against an upstairs balcony as Mr. Pellecer was changing a light. Upon falling to the ground, the ladder first made contact with the side of the house, breaking a window. Plaintiffs have claimed throughout these proceedings that the side rail of the ladder failed, or cracked, causing the ladder to fall. The Werner Defendants espoused a competing theory that it was the fall that caused the damage to the ladder.

The petition for damages asserts that the ladder was unreasonably dangerous for its anticipated use pursuant to the Louisiana Products Liability Act, La. R.S. 9:2800.51, *et seq.* ("LPLA") in four respects: 1) construction or composition; 2) design; 3) lack of adequate warnings; and 4) failure to conform to its express warranties made by the Werner Defendants (particularly that the ladder had a load capacity sufficient to support the weight of Mr. Pellecer). Plaintiffs further claim that the Werner Defendants failed to act as prudent manufacturers during a 2018 recall of 78,000 aluminum ladders (which they assert applied to the subject ladder) by failing to warn Mr. Pellecer to immediately stop using his ladder.

In November 2021, the Werner Defendants filed a motion for summary judgment asserting that they were not the manufacturers of the ladder (Model C378

Mark 9), specifically claiming that Mr. Pellecer's ladder was manufactured in 1991, by a now-bankrupt company, Werner Co., a Pennsylvania corporation ("Werner Co. (PA)"), (later changed to "Old Ladder"), an entity that Plaintiffs did not name as a defendant and did not pursue a claim against in the bankruptcy court.

The Werner Defendants argued in their motion for summary judgment, and in this appeal, that Werner Co. (PA), along with its holding company, Werner Holding Co. (DE) and several related entities filed for bankruptcy in 2006. New Werner incorporated in 2007, to purchase certain assets of Werner Co. (PA) through the bankruptcy action. Following the purchase, New Werner formed Werner Co. (DE) to operate the business using the purchased assets. Among the assets purchased pursuant to the Asset Purchase Agreement were the Werner name, trademark, and goodwill. The Werner Defendants submit that they assumed certain liabilities of Werner Co. (PA) but did not assume any future product liability claims from the previous Werner companies. The Asset Purchase Agreement also provided that Werner Co. (PA) would change its corporate and company names to avoid confusion. Pursuant thereto, the name was changed to Old Ladder.

Plaintiffs opposed the motion for summary judgment arguing that the Werner Defendants should be considered the manufacturers of the ladder pursuant to La. R.S. 9:2800.53(1)(a) of the Louisiana Products Liability Act ("LPLA"), which defines manufacturer to include "[a] person or entity who labels a product as his own or who otherwise holds himself out to be a manufacturer of the product." Plaintiffs further argued that the date upon which the ladder was fully assembled and sold was a material question of fact.

The motion for summary judgment was denied November 5, 2021. The Werner Defendants' writ application to this Court was denied. *Pellecer v. Werner Co.*, 2021-0702 (La. App. 4 Cir. 12/8/21), unpub. A writ application to the Louisiana Supreme Court was also denied. *Pellecer v. Werner Co.,* 2022-00048, (La. 3/02/22), 333 So.3d 834.

A week-long jury trial commenced November 14, 2022. The Werner Defendants' motion for directed verdict was denied from the bench. Judgment was rendered December 21, 2022, on the jury verdict, awarding damages to Plaintiffs in the amount of $5,036,012.00 plus legal interest. The Werner Defendants and Old Ladder were each determined to be 50% at fault. [2]

As reflected on the jury verdict form, the jury determined that: 1) the Werner Defendants were the manufacturers of the ladder; 2) the Werner Defendants labeled the ladder as their own, or held the ladder out as its own; 3) the ladder was defective when it left the Werner Defendants' control; 4) the death of Mr. Pellecer was proximately caused by an unreasonably dangerous characteristic of the ladder; 5) the death of Mr. Pellecer arose from a reasonably anticipated use of the ladder; and 6) Mr. Pellecer was not negligent.

The Werner Defendants filed a motion for JNOV, or in the alternative, a motion for new trial, asserting that the evidence showed they did not manufacture, market, sell, or otherwise handle the subject ladder. The motion was denied November 17, 2023. This timely suspensive appeal followed.

On appeal, the Werner Defendants assert the following assignments of error:

---

[2] The petition also asserted a premises liability claim against the property owners, Sue Ann Silverman Singer and Harold Singer. A settlement was reached with the Singer defendants prior to trial.

1. In denying summary judgment, a directed verdict, and JNOV, the trial court erred in interpreting La. R.S. 9:2800.53(1), misconstruing the statute to deem the Werner Defendants as manufacturers of the ladder;

2. The jury erred in finding that the Werner Defendants ever had the ladder in their control or that they held the ladder out as their own, and the trial court erred in failing to grant a JNOV on this basis; and

3. The trial court erred in allowing Plaintiffs' marketing expert to give a legal opinion on whether The Werner Defendants are manufacturers under La. R.S. 9:2800.53(1).

***Preliminary Matter/Jurisdiction***

"Prior to addressing the merits of an appeal, appellate courts have the duty to determine *sua sponte* whether their appellate court jurisdiction has been properly invoked by a valid, final judgment." *Stafford v New Orleans Fire Dept*., 2023-0495, p. 18 (La. App. 4 Cir. 2/1/24), 384 So.3d 909, 924-25 (citing *Bayer v. Starr Int'l Corp*., 2017-0257, p. 3 (La. App. 4 Cir. 8/15/17), 226 So.3d 514, 517).

La. C.C.P. art. 968 "expressly provides that a judgment denying a motion for summary judgment is not appealable." *See Elysian, Inc. v. Neal Auction Co., Inc.,* 2020-0674, p. 7 (La. App. 4 Cir. 7/21/21), 325 So.3d 1075, 1082. Additionally, "[n]either the denial of a motion for JNOV nor the denial of a motion for a new trial are final appealable judgments; rather, they are interlocutory judgments." *Lirette v. Adams*, 2023-0527, p. 7 (La. App. 4 Cir. 7/10/24), --- So.3d ----, ----, 2024 WL 3355100, *4.

However, it is well established that "an appellate court may consider interlocutory judgments ... as part of an unrestricted appeal from a final judgment." *Everett v. Air Products & Chemicals, Inc*., 2022-0539, p. 7 (La. App. 4 Cir.

5

5/2/23), 382 So.3d 216, 223 (quoting *New Orleans Fire Fighters Pension and Relief Fund v. City of New Orleans,* 2017-0320, p. 5 (La. App. 4 Cir. 3/21/18), 242 So.3d 682, 688, n. 12). Moreover, this Court may review an appeal from a denial of a motion for new trial as a final, appealable judgment if it is clear that the appellant intended to appeal the merits of the case. *Succession of Hickman,* 2022-0730, p. 6 (La. App. 4 Cir. 3/15/23), 359 So.3d 584, 590.

In the present case, the Werner Defendants are appealing the final judgment on the jury verdict. Thus, this Court has jurisdiction to consider the interlocutory rulings in addressing the merits of this unrestricted appeal.

## LAW AND ANALYSIS

**STANDARD OF REIVEW**

We set forth below the standard of review of the various lower court rulings that the Werner Defendants raise in this appeal.

### *Summary Judgment*

Appellate courts review the grant or denial of a summary judgment motion de novo using the identical criteria that trial courts use to determine whether summary judgment is proper. *See Planchard v. New Hotel Monteleone, LLC*, 2021-00347, p. 2 (La. 12/10/21), 332 So.3d 623, 625 (citations omitted). "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). The mover bears the burden of proof. La. C.C.P. art. 966(D)(1). When the mover will not bear the burden of proof at trial, the mover need not negate all essential elements of the adverse party's claim.

6

*Id.* Rather, the mover need only point out the absence of factual support for one or more elements of the adverse party's claim. *Id.* The burden then shifts to the adverse party "to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

The summary judgment procedure is favored and "designed to secure the just, speedy, and inexpensive determination of every action." La. C.C.P. art. 966(A)(2). The summary judgment procedure is designed to pierce the pleadings and to assess the evidence to determine if any genuine issue of material fact exists warranting a trial. *See Cutrone v. English Turn Prop. Owners Ass'n, Inc.*, 2019-0896, p. 7 (La. App. 4 Cir. 3/4/20), 293 So.3d 1209, 1214 (quoting *Bridgewater v. New Orleans Reg'l Transit Auth.*, 2015-0922, p. 4 (La. App. 4 Cir. 3/9/16), 190 So.3d 408, 411).

***Motions for Directed Verdict and JNOV/New Trial***

The standard of review for motions for directed verdict and JNOV have been clearly set forth by this Court, as follows:

> The standard of review required by the trial court in ruling on both a directed verdict and a motion for JNOV is whether "after considering the evidence in the light most favorable to the party opposed to the motion, the trial court finds that it points so strongly and overwhelmingly in favor of the moving party that reasonable minds could not arrive at a contrary verdict on that issue." Thus, a trial court may only grant a directed verdict or a JNOV when the evidence overwhelmingly points to one conclusion. *Simon v. American Crescent Elevator* Co., 99-2058, p. 14 (La. App. 4 Cir. 4/26/00), 767 So.2d 64, 73-4.
>
> On appeal, the standard of review of directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict under the evidence. *Everhardt v. Louisiana Dept. of Transp. and Development*, 07-0981, p. 13 (La. App. 4 Cir. 2/20/08), 978 So.2d 1036, 1047. When reviewing the denial of a Motion for Directed

Verdict, the question to be asked by the appellate court is not whether the plaintiff proved his case by a preponderance of the evidence, but rather, upon reviewing the evidence submitted, the court could conclude that reasonable persons could not have reached a verdict in favor of the plaintiffs. *Id*.

The standard for review for a JNOV is a two-part inquiry. First, using the same criteria the trial court uses in deciding whether to grant JNOV, the appellate court must determine if the trial court erred. *Bigelow v. Crescent Title, L.L.C.,* 08-0932 p. 6 (La. App. 4 Cir. 10/15/08), 997 So.2d 83, 87; citing *Davis v. Wal-Mart Stores, Inc*., 00–0445, p. 5 (La. 11/28/00), 774 So.2d 84, 89. "The standard for granting or denying a JNOV is the same as that for a directed verdict—whether reasonable minds could differ." *Id*.; citing Frank L. Maraist and Harry T. Lemmon, *1 Louisiana Civil Law Treatise, Civil Procedure § 13.4 (1999)*; see La Code. Civ. Proc. art. 1811. After determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review. *Bigelow v. Crescent Title, L.L.C*., 997 So.2d at 87.

*Hammons v. St. Paul*, 2012-0346, 2012-0347, pp. 5-6 (La. App. 4 Cir. 9/26/12), 101 So.3d 1006, 1010-11.

Regarding the Werner Defendants' motion for new trial sought in the alternative to the motion for JNOV, this Court stated as follows in *In re Boryca*, 2020-0670, 0671, 0672, 0673, p. 9 (La. App. 4 Cir. 8/11/21), 366 So.3d 110, 117-18:

The standard of review for a motion for new trial is "whether the trial court abused its discretion." *Campbell v. Tork, Inc*., [2003-1341, p. 4 (La. 2/20/04),] 870 So.2d 968, 971. In making this determination, an appellate court must balance the deference due to the jury in its role as a fact finder and the discretion given to the trial court in its decision on whether to grant a new trial. *Id*. Generally, a trial judge "may not interfere with a jury verdict with which he simply disagrees when that verdict is based on a fair interpretation of the evidence." *Id*. [2003-1341, p. 11, 870 So.2d] at 975.

***Jury Determinations***

In *Spice Factory Condo. Assoc., Inc. v. McArdle*, 2023-0080, pp. 5-6 (La. App. 4 Cir. 10/24/23), 382 So.3d 942, 946, this Court reiterated our standard of review of a jury determination as follows:

> "It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989). Furthermore, "where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." Id. at 844-845; *see also Ridgeway v. Pierre*, 06-0521, pp. 9-10 (La. App. 4 Cir. 1/11/07), 950 So. 2d 884, 891.

> The Louisiana Supreme Court further set forth that "if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Rosell*, 549 So. 2d at 844. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.* Moreover, "[c]redibility determinations, including the evaluation of expert testimony, together with the ultimate issue of whether a plaintiff has satisfied his burden of proof are factual issues to be resolved by the trier of fact and will not be disturbed on appeal in the absence of manifest error." *Ferrell v. Minden Family Care Center*, 30,088, p. 3 (La. App. 2 Cir. 12/19/97), 704 So.2d 969, 972.

**DISCUSSION**

The central argument presented in this appeal is that Plaintiffs failed to prove that the Werner Defendants manufactured, marketed, sold and/or controlled the subject ladder. They submit that the ladder was manufactured by Old Ladder in 1991, 16 years before the Werner Defendants came into existence. [3] Plaintiffs have maintained that the ladder was defective or unreasonably dangerous and that

---

[3] We note that the Werner Defendants do not cite as error the jury verdict findings that: 1) the ladder was defective or unreasonably dangerous as manufactured; and 2) that Mr. Pellecer was not negligent.

under the factual evidence presented, the Werner Defendants should be considered the manufacturers as defined by La. R.S. 9:2800.53(1)(a) of the LPLA.

We now review the record evidence presented in connection with these assertions.

In support of their position that the ladder was defective when manufactured, Plaintiffs presented the testimony of engineering and metallurgical expert, Dr. Jahan Rasty.[4] After examining the subject ladder, inspecting the accident site shortly after the accident, and performing certain laboratory testing, Dr. Rasty opined that the ladder contained a manufacturing defect and was unreasonably dangerous for its intended use. Specifically, he determined that the ladder cracked, originating at the side rail rivet hole, causing the ladder to fail. Dr. Rasty identified an anomaly or a weakening mechanism at the point where the fracture occurred. He could not say what caused the anomaly.

From his examination of the ladder and the accident scene, Dr. Rasty concluded that the ladder cracked or failed while in use, causing the ladder to fall. He explained that he tested and refuted the defense theory that the damage to the ladder (including the crack in the side rail) occurred *after* the ladder fell.

Finally, Dr. Rasty testified that the ladder did contain some warning stickers, but none that warned the ladder could break while in use. He acknowledged that the ladder warranted a weight limit of 250 pounds; Mr. Pellecer weighed less than 250 pounds. Based upon this evidence, Dr. Rasty opined that the ladder did not hold up to its expressed warranty.

---

[4] Dr. Rasty has a PhD in mechanical engineering with a specialization in mechanical metallurgy and failure analysis. Dr. Rasty explained that mechanical metallurgy is a field of mechanical engineering that deals with stresses, the relationship between macro behavior of materials and microscopic features within the materials.

Plaintiffs also called Dale King, an Advanced Development Engineer for the Werner Defendants, to testify at trial. Mr. King has a B.S. in management engineering, and began working for Werner in 1978. He identified the damage to the right side rail of Mr. Pellecer's ladder as described by Dr. Rasty. However, he refuted Dr. Rasty's opinion, stating that he could see no anomaly on the ladder. Mr. King believed that the ladder was damaged in the fall.

Mr. King acknowledged that Werner ladders are not supposed to have cracks or fractures. He also acknowledged that a Werner ladder would have no shelf life as long as it was taken care of.

Mr. King confirmed that Mr. Pellecer's ladder, a Model C378 Mark 9, a five-way configuration ladder, contained a Werner brand logo. He stated that Werner manufactured and sold this model from 1982 to 2002. Mr. King testified that the date stamps on Mr. Pellecer's ladder indicated that the back section was manufactured in June 1991, and the front section in November 1991. He explained that the two sections are normally manufactured separately and assembled at a later date. In this instance, presumably, November 1991. Mr. King further stated that the last Mark 9 model ladder would have left inventory no later than 2002, when the newer Mark 10 model of five-way ladders was introduced.

Mr. King testified that the Werner Defendants never manufactured Mr. Pellecer's ladder, as they did not exist when the ladder was manufactured. He further stated that the Werner Defendants never had control over the ladder and never held themselves out as the manufacturers.

Mr. King was questioned about a 2018 recall of approximately 78,000 Werner ladders involving five models of aluminum five-way multi-purpose ladders. He stated that the recalled ladders were a different design than Mr.

11

Pellecer's ladder. He identified a June 2018 recall "draft" document prepared by the Werner Defendants indicating that the Multipurpose Telescoping Aluminum Ladders can break while in use, causing a fall hazard, and warning consumers to stop using the ladders immediately. Among the words crossed out in the draft document were "side rails can crack and fail while in use." He explained that some consumers of the recalled ladders would have received a notice by mail and others could have been notified through the company's website, a press release, Facebook or Twitter. Werner closed the recall in April 2019. Mr. King reiterated that there were no recalls of the Mark 9 ladder.

Plaintiffs have argued that the Werner Defendants failed to act as a prudent manufacturer during the 2018 recall, by failing to issue a similar warning for Mr. Pellecer's five-way configuration ladder. Plaintiffs pointed out that the recall was closed approximately six months prior to Mr. Pellecer's accident.

Over the Werner Defendants' objection as to relevance, Mr. King was asked about a 1976 Illinois case[5] involving an older model of Werner ladders, the Mark 3, Model 388 aluminum five-way combination ladder. He acknowledged that Werner's chief engineer, Lawrence Kocina ("Mr. Kocina"), testified in the *Gillispie* case regarding a structural defect in the ladders. Mr. King read from Mr. Kocina's testimony wherein it was stated that prior to 1972, cracks would occasionally occur in the five-way configuration ladders, in the flange or area where the side rail was bent outward to produce a flaring affect. When asked what was done to correct the issue, Mr. King stated that he believed the flange was

---

[5] *Billy Gillespie v. R.D. Werner Co., Inc.,* 43 Ill.App.3d 947, 357 N.E.2d 1203, 2 Ill.Dec. 760 (1976) *rev'd*, 71 Ill.2d 318, 375 N.E.2d 1294, 17 Ill.Dec. 10 (1978).

lengthened (to change the side rail a little bit) from the Mark 3 Model to the next Mark 4 Model.

The Werner Defendants argue that the *Gillespie* case is irrelevant. They contend that the existence of a design defect in ladders manufactured in 1971 does not establish a defect in the subject ladder, particularly after the design was changed to correct the problem in 1973. Plaintiffs countered that the 2018 recall and the *Gillespie* case show that the Werner five-way configuration ladders have a history of cracks and fractures occurring on the side rails.

Regarding the Werner company name, Mr. King testified that the Werner logo has been somewhat modified over the years, but that it is still the Werner brand label. He acknowledged a 1996 SEC filing wherein the company identified itself as the nation's largest manufacturer and marketer of ladders and other climbing products. Mr. King considered Werner to be the most widely recognized climbing products brand name.

Plaintiffs presented the testimony of Joe M. Ricks Jr., PhD ("Dr. Ricks"). Dr. Ricks has a PhD in marketing, with a minor in Cognitive Psychology. Dr. Ricks explained that he studies consumer perceptions to develop an understanding of how consumers perceive things. He explained to the jury that "brand equity is the value that a brand itself brings." For a brand, "the logo is extremely important."

Dr. Ricks identified the Werner logo on Mr. Pellecer's ladder. He stated that the Werner brand logo was the same (only slightly updated) from 1993 to 2012. In maintaining the logo, Dr. Ricks explained that "it continues to leverage the equity that has been built up in that brand. Consumers will see that brand." Dr. Ricks

considered that the "key" here was an intentional decision to show that there was no change in the company.

Dr. Ricks also reviewed Werner SEC filings to get what he considered to be management's perspective on the strength of the Werner brand. Reading from the SEC filings, Dr. Ricks relayed the following:

> The Werner brand name has nearly a 50-year history and management believes Werner is the most recognized name by both professional and consumers end users of climbing products. The company has established its leading brand name primarily by providing high quality products and strong consumer service.

Dr. Ricks testified that following the 2007 bankruptcy, the Werner Defendants continued to use the Werner brand and logo. He noted there was no marketing, advertising or public announcements to educate the public that there had been a change in the company. He opined that in deciding to maintain the brand and logo, the company wanted the consumer to believe that nothing was different. In conclusion, based on his study of the case, including the strategy that was executed by management, Dr. Ricks opined that the Werner Defendants "absolutely" held themselves out to the public as the manufacturers of Mr. Pellecer's ladder.

The Werner Defendants called one witness to testify at trial, Geoffrey Hartenstein ("Mr. Hartenstein"), Executive Vice-President, Secretary and General Counsel for the company until his retirement in 2022. Mr. Hartenstein started with the company as corporate counsel in 1994.

Mr. Hartenstein explained that the Werner Defendants were a group of investors who successfully bid to purchase the company (Old Ladder) through the bankruptcy action. He testified that there were no similar owners or board

members between the two entities.  However, he acknowledged that some executive officers and employees did stay on after the bankruptcy.

Mr. Hartenstein was asked what steps the Werner Defendants took to advise its customers that a new company had been created.  He stated that new bank accounts and tax ID numbers were created; letters went out to every customer; meetings were held with major customers; and press releases were put out.

On cross-examination, Mr. Hartenstein acknowledged that after the bankruptcy, the Werner trademark was not changed.  The former company's name was changed to Old Ladder.  He further stated that the new company kept the Werner name because "the Werner brand is a well-respected brand.  It stands for quality.  It's something that was valuable."

Finally, Mr. Hartenstein identified the Bankruptcy Court documents, including the Asset Purchase Agreement, which were entered into evidence. He stated that pursuant thereto, the Werner Defendants assumed no future liability claims.

### Assignments of Error

The Werner Defendants first argue that in denying their motion for summary judgment, directed verdict, and JNOV, the trial court misconstrued the LPLA, considering the Werner Defendants to be the manufacturers of Mr. Pellecer's ladder.  The second assignment of error asserts that the jury erred in finding that the Werner Defendants ever had the ladder in their control or held the ladder out as their own.  As both assignments of error require an analysis of the LPLA, they will be discussed together herein.

### Louisiana Products Liability Law

The LPLA is set forth in La. R.S. 9:2800.51, *et seq*., and "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. Specifically, La. R.S. 9:2800.54 provides as follows:

> A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
>
> B. A product is unreasonably dangerous if and only if:
>
> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
>
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.[6]
>
> C. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 or 9:2800.57 must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product.
>
> D. The claimant has the burden of proving the elements of Subsections A, B and C of this Section.

Additionally, La. R.S. 9:2800.53(1)(a) defines manufacturer, in pertinent part, as follows:

---

[6] We reiterate that in this appeal, the Werner Defendants do not raise as error, the jury's findings that Mr. Pellecer's ladder was defective and/or unreasonably dangerous.

(1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:

(a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.

The Werner defendants have maintained that they cannot be considered manufacturers as defined by the statute, as they had no contact with the subject ladder. They further assert that La. R.S. 9:2800.53(1)(a), which is commonly known as the apparent-manufacturer doctrine,[7] applies *only* to sellers or distributors of a product that actually handled and profited from the sale of the product. However, we find that the statute contains no such limitation. La. R.S. 9:2800.53(1)(a) succinctly provides that "[a] person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product" is considered a manufacturer.

Here, we are guided by the well-established principle that "[t]he rules of statutory construction require the law to be applied as written if the law is clear and unambiguous and its application does not lead to absurd consequences. La. C.C. art. 9." *Gaspard v. City of Abbeville*, 2013-2817, p. 3 (La. 3/14/14), 136 So.3d 790, 791.

Based on the recognized principles of statutory interpretation, we conclude that the definition of a manufacturer set forth in La. R.S. 9:2800.53(1)(a) is clear and does not provide that its application is limited to sellers and distributors of a product. The question then before us in this appeal, is whether Plaintiffs presented

---

[7] The apparent-manufacturer doctrine "allows a plaintiff to hold a seller or distributor liable for injuries caused by a product defect, when the seller leads a reasonable consumer to believe that it is the manufacturer of the product." *Martin v. Pham Le Bros.*, *LLC*, 2021-0159, p. 9 (La. App. 5 Cir. 9/22/21), 330 So.3d 346, 352.

sufficient evidence to support their claim that the Werner Defendants should be considered the manufacturers of Mr. Pellecer's ladder.

Initially, in connection with their motion for summary judgment, the Werner Defendants introduced the following into evidence: 1) the affidavits of Mr. King and Mr. Hartenstein; 2) the bankruptcy documents, including the Asset Purchase Agreement; 3) a photo of the date stamp on Mr. Pellecer's ladder, and 4) Entity Details from the Delaware Secretary of State for the Werner Co. and New Werner Holding Co., Inc.

Plaintiffs opposed the motion for summary judgment, submitting: 1) the affidavits of Dr. Rasty, Dr. Ricks, Mr. King and Mr. Hartenstein; 2) excerpts from the depositions of Darlene Ward Pellecer, Dr. Rasty, and Mr. King; 3) Dr. Rasty's report; 4) information on the 2018 recall; and 5) the petition for damages. As stated above, the motion for summary judgment was denied. At the trial on the merits, the jury considered much of that same evidence and determined that the Werner Defendants were the manufacturers of Mr. Pellecer's ladder, holding the ladder out as their own.

At trial before the jury, Dr. Ricks stated that the Werner Defendants "absolutely" held themselves out to the public as the manufacturers of Mr. Pellecer's ladder. He testified that after acquiring the company through the bankruptcy, the Werner Defendants continued to use the Werner brand logo on all its ladders. Dr. Ricks also stated in his affidavit (presented in opposition to the Werner Defendants' motion for summary judgment) that based on their post-bankruptcy actions, the Werner Defendants "strategically and intentionally maintained the Werner Brand and they did so to leverage the equity and name recognition that the Werner Brand had built with its customers and suppliers."

18

The Werner Defendants submit that the jury could not have reasonably found that they held the ladder out as their own, considering the fact they did not come into existence until sixteen years after its manufacture. As stated above, Mr. King testified that the two sections of Mr. Pellecer's ladder were manufactured in June and November of 2019. He presumed the ladder would have been assembled in November of that year. Mr. King also testified that all Mark 9 ladders would have left inventory in 2002.

Linda Pellecer Seward testified at trial that her father lost all of his tools in late August 2005, when Hurricane Katrina destroyed everything in his garage. She stated that he thereafter replaced all of his tools, including his ladders. Exactly when Mr. Pellecer purchased the ladder, and from what source, was never established. Mr. Pellecer's widow, Darlene Pellecer, provided similar statements in her deposition testimony submitted in opposition to the motion for summary judgment. Plaintiffs have maintained that Mr. Pellecer could have purchased the ladder after June of 2007 when the Werner Defendants purchased the company in the bankruptcy.

Considering our appellate standard of review, and conducting a *de novo* review of the record, we find no error on the part of the trial court in denying the Werner Defendant's motion for summary judgment. In that proceeding, Plaintiffs clearly identified material questions of fact concerning the actions taken by the Werner Defendants post-bankruptcy as well as the circumstances surrounding Mr. Pellecer's acquisition of the ladder.

At the conclusion of the trial, the jury determined that "by a preponderance of the evidence" the Werner Defendants labeled the ladder as its own or held the ladder out as its own at the time Mr. Pellecer bought the ladder. Based on the

19

evidence presented, as described above, we find that the verdict was supported by a reasonable factual basis, and that the jury was within its province to conclude that the Werner Defendants were the manufacturers of Mr. Pellecer's ladder pursuant to the LPLA. Accordingly, we affirm the trial court's judgment on the jury verdict.

Regarding the denial of the motion for directed verdict, we find that the trial court did not abuse its discretion. Plaintiffs clearly presented sufficient evidence in support of their action against the Werner Defendants, to allow the matter to be decided by the jury.

Finally, having determined that the jury verdict was supported by a fair interpretation of the evidence, we conclude that the trial court did not manifestly err in denying the motion for JNOV, and did not abuse its discretion in denying the alternative motion for new trial.

In the Werner Defendants' third and final assignment of error, it is argued that the trial court erred in allowing Dr. Ricks to give a legal opinion that the Werner Defendants held themselves out as the manufacturers of Mr. Pellecer's ladder. We disagree.

The Werner Defendants correctly point out that experts cannot render legal conclusions that are reserved for the trier of fact. *Lafayette Steel Erector, Inc. v. G. Kenrick, LLC*, 2022-0892, p. 14 (La. App. 1 Cir. 8/29/23), 375 So.3d 464, 475. However, in the case before us, we do not find that Dr. Ricks provided improper legal conclusions in rendering his opinion.

Dr. Ricks was qualified as an expert in marketing and branding. His opinion, that the Werner Defendants held themselves out as the manufacturers of Mr. Pellecer's ladder, was based on his specializations and on his own research into the actions of the Werner Defendants. Specifically, he explained that he

20

examined the post-bankruptcy SEC filings, the trademarks and brand logos used throughout the company's history, and the testimony of Mr. King and Mr. Hartenstein regarding the company's branding decisions.

Furthermore, the record demonstrates that Dr. Ricks was specifically cross-examined on this issue as follows:

> Q. All I want to do is make sure that your opinion is as a branding expert, it's not as a legal - there's no legal implication to your opinion, correct?
>
> A. That's absolutely correct.
>
> Q. Okay. Whether or not somebody is liable or not, that's not what you're saying?
>
> A. That's not what I'm saying. And that's - to be perfectly frank that's not what I was asked, right?
>
> Q. Right.
>
> A. I was [sic] did this company hold themselves out to the general public as the manufacturers.
>
> Q. That's right.
>
> A. That's the question that I'm answering.

It is well-established that "[a] trial court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion." *Youngblood v. Hampton*, 2022-0202, p. 9 (La. App. 4 Cir. 12/9/22), 367 So.3d 676, 684 (quoting *Alfred Conhagen, Inc. of Louisiana v. Ruhrpumpen, Inc.,* 2021-0396, p. 5 (La. App. 4 Cir. 4/13/22), 338 So.3d 55, 62).

In addition, La. C.E. art. 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact."

Having considered the evidence and the expert testimony, we find no abuse of discretion on the part of the trial court in permitting Dr. Ricks to render his opinion.  Accordingly, this assignment of error lacks merit.

**DECREE**

For the foregoing reasons, we affirm the December 21, 2022 judgment rendered on the jury verdict, and we affirm the interlocutory rulings that have been raised in this appeal.[8]

**AFFIRMED**

---

[8] The November 5, 2021 denial of summary judgment, the denial of the motion for directed verdict, and the November 17, 2023 judgment denying the motion notwithstanding the verdict/alternative motion for new trial.